PEOPLE v TERRELL

Docket No. 286834. Submitted December 8, 2009, at Detroit. Decided
     August 26, 2010, at 9:15 a.m.

     Tion Terrell was convicted by a Wayne Circuit Court jury of assault
          with intent to commit murder, being a felon in possession of a
          firearm, and possession of a firearm during the commission of a
          felony. Terrell was jointly tried with a codefendant who had
          asserted his Fifth Amendment right not to testify at trial and who
          was acquitted by the jury. After his conviction, Terrell moved for a
          new trial on the basis of newly discovered evidence, specifically,
          that a codefendant would testify that the victim had been armed
          and that another codefendant, not Terrell, shot the victim. The
          court, James A. Callahan, J., granted the motion, concluding that
          although the proffered testimony of the codefendant was not
          newly discovered, it had been unavailable to Terrell at the time of
          his trial. The prosecution appealed by leave granted.

          The Court of Appeals held:

          1. A new trial is warranted on the basis of newly discovered
     evidence when (1) the evidence itself, not merely its materiality, is
     newly discovered, (2) the newly discovered evidence is not cumu-
     lative, (3) the party could not, using reasonable diligence, have
     discovered and produced the evidence at trial, and (4) the new
     evidence makes a different result probable on retrial. A codefen-
     dant's posttrial or postconviction testimony, however, does not
     constitute newly discovered evidence sufficient to warrant a new
     trial when the defendant was aware of the evidence before trial.
     Moreover, MCR 6.431(B) does not authorize the grant of a new
     trial on the basis of such evidence because the evidence is not
     newly discovered, but merely newly available. The rule applies
     even when a codefendant invokes his or her Fifth Amendment
     right to not testify.

          2. The trial court should not have granted Terrell's motion for
     a new trial because the record revealed that he knew or should
     have known before trial that his codefendant could have provided
     material testimony. Thus, the evidence was only newly available,
     not newly discovered, and therefore was not sufficient to warrant
     a new trial.

Reversed and remanded.

SHAPIRO, J., concurring, concurred in the result because Terrell did not provide an adequate basis for the trial court to grant his motion. Because there was other evidence that Terrell acted in self-defense, defense counsel made no attempt to interview the codefendant, there was no attempt to call him as a witness, there was no attempt to seek severed trials, and there was no offer of proof, Terrell failed to show that the evidence was genuinely unavailable, and the trial court should have denied the motion for a new trial. Judge SHAPIRO would hold, however, that testimony of a codefendant who asserted his or her Fifth Amendment privilege at trial should not be categorically excluded but should be considered on a case-by-case basis.

CRIMINAL LAW — NEW TRIAL — NEWLY DISCOVERED EVIDENCE — CODEFENDANT'S TESTIMONY.

A codefendant's posttrial or postconviction testimony does not constitute newly discovered evidence sufficient to warrant a new trial when the defendant was aware of the evidence before trial; such evidence is not newly discovered, but merely newly available, even when the codefendant invoked his or her Fifth Amendment right to not testify at trial (MCR 6.431[B]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Thomas M. Chambers*, Assistant Prosecuting Attorney, for the people.

*Marvin Barnett* for defendant.

Before: METER, P.J., and BORRELLO and SHAPIRO, JJ.

BORRELLO, J. Following a jury trial, defendant Tion Terrell[1] was convicted of assault with intent to commit murder, MCL 750.83; being a felon in possession of a firearm, MCL 750.224f; and possession of a firearm

---

[1] Tion Terrell was tried with codefendant, Dana Hudson, who was acquitted on all charges. Another codefendant, Reginald Myers, was included on the felony information, but he was not tried with defendant and Hudson.

during the commission of a felony (felony-firearm), MCL 750.227b. The prosecution appeals by leave granted an order granting defendant a new trial on the basis of newly discovered evidence. The issue on appeal is whether the posttrial statements of a codefendant that exculpated the defendant constituted newly discovered evidence sufficient to warrant a new trial when the codefendant invoked his Fifth Amendment right not to testify at trial. For the reasons set forth in this opinion, we adopt the rule expressed by the majority of federal circuit courts that when a defendant knew or should have known that a codefendant could provide exculpatory testimony, but did not obtain that testimony because the codefendant invoked the privilege against self-incrimination, the codefendant's posttrial statements do not constitute newly discovered evidence, but are merely newly available evidence. Accordingly, we reverse the trial court's order granting defendant a new trial and remand this matter to the trial court.

I. FACTS AND PROCEDURAL HISTORY

This case arises from the nonfatal shooting of Deshawn Evans on October 28, 2007. On that date, Evans was on Yacama Street in Detroit, Michigan. Evans's friend, Dana Hudson, was sitting in Hudson's car having a friendly conversation with Evans. A few minutes later, another man, Reginald Myers, drove onto Yacama Street, and Evans and Myers had an argument. According to Evans, during or shortly after the argument with Myers, he received a telephone call from Derrick Steward, whose nickname was "Twin."[2] Twin informed him that he could come over and retrieve his

---

[2] At trial, Evans identified as "Twin" the individual who called him, and asserted that he did not know Twin's real name. However, subsequent testimony revealed that Twin's real name is Derrick Steward.

cell phone charger. Evans testified that he left to retrieve his charger and that as he left, he saw defendant, who was also his friend, turning onto Yacama Street in a white Impala. Although Evans asserted that he left to retrieve the cell phone charger from a home on Coventry Street[3] and denied that he went to the home to obtain a gun, a defense witness testified that Evans came to the home and "basically asked everybody that was there" "for a pistol, a gun." The witness testified that Twin gave Evans a gun. According to Evans, he returned to Yacama Street about 30 to 45 minutes later. Evans testified that when he returned, defendant hit him in the face and head with a gun and then shot him twice, and Myers also shot him in both thighs. Another witness, who lived on Yacama Street, testified that after the shooting, a man drove up in a car, approached the victim, and asked: " 'What I want to know is where's the gun. I know he had a gun because I gave him one.' " According to Evans, after they shot him, defendant and Myers ran to Hudson's car, and the men drove off, with Hudson driving.

Defendant and Hudson were tried together. Defendant was convicted of the offenses indicated earlier. Hudson invoked his Fifth Amendment privilege against self-incrimination and was acquitted.

Defendant moved for a new trial on the basis of newly discovered evidence in the form of the testimony of Derrick Steward.[4] The trial court held a hearing on defendant's motion. At the hearing, defendant pre-

---

[3] The testimony referred to the street on which the home was located both as Coventry and Covington.

[4] Defendant's motion for a new trial is not included in the lower court record. We have gleaned defendant's arguments in support of his motion for a new trial from the relevant motion hearings and the prosecution's response to the motion.

sented the testimony of Steward and the testimony of defendant's codefendant, Hudson, as well as affidavits signed by both men, in support of his motion. The trial court ruled that the testimony of Steward would have been cumulative and therefore did not warrant a new trial. Defendant has not appealed the trial court's ruling in this regard. What is at issue on appeal is the trial court's granting of defendant's motion for a new trial on the basis of the testimony of Hudson. At the hearing, Hudson acknowledged that he and defendant were close friends and had known each other since childhood. Hudson further testified that he was present on October 28, 2007, when Evans was shot and that he observed Evans in possession of a chrome and silver, black-handled nine-millimeter handgun before Evans was shot. According to Hudson, only ten minutes elapsed between the time Evans initially left Yacama Street and the time he returned. Hudson saw Evans approach defendant and Myers and observed Evans pull the gun from underneath his shirt when he was about four feet away from them. According to Hudson, defendant and Evans struggled and fought over the gun, and the gun fell to the ground. Hudson asserted that Myers, not defendant, shot Evans with the gun that had fallen. Hudson testified that he drove away in his car, alone, after the shooting.

In granting defendant a new trial on the basis of Hudson's testimony, the trial court found that although the testimony was not newly discovered evidence, it was not available to defendant at the time of trial:

> The seminal issue in this case from the standpoint of the Court is the unavailability, the impossibility of Mr. Dana Hudson's testimony, which is supportive of the fact that Mr. Evans, at the time this incident occurred, was specifi-

cally armed and had drawn a handgun prior to this
shooting taking place. . . .

*  *  *

Addressing the testimony of Mr. Hudson and the trial
testimony of the defendant, the obligation to disprove self-
defense is ostensibly that of the prosecution. It is not the
obligation of the prosecution to disprove, but in this particu-
lar case, the defendant was totally denied the opportunity of
presenting the testimony of Mr. Hudson which may have been
corroborative of the anticipated testimony of [defendant], had
he given testimony concerning self-defense. Because Mr.
Hudson had the right to assert his Fifth Amendment right
and therefore denied the defendant Terrell his testimony,
which clearly lent to the fact that Mr. Evans was armed at the
time, had brandished the handgun prior to the altercation
between he and Mr. Meyers [sic], and most importantly that
the shooting was not at the hands of [defendant], but at the
hands of Mr. Meyers [sic], bears directly upon the facts of this
particular case. Even though this may not have been newly
discovered evidence, it certainly was not available to the
defendant at the time this particular trial took place, it was
therefore incapable of the defendant Terrell to have pre-
sented that testimony and in the interest of justice the Court
grants the defendant Terrell a new trial.

In an opinion and order dated July 14, 2008, the trial
court granted defendant's motion for a new trial on the
basis of Hudson's testimony. This Court granted the
prosecution's request for leave to appeal.[5]

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's
decision to grant or deny a new trial. *People v Miller*,

---

[5] *People v Terrell*, unpublished order of the Court of Appeals, entered
August 15, 2008 (Docket No. 286834). Defendant did not file a brief on
appeal.

482 Mich 540, 544; 759 NW2d 850 (2008). An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 467; 751 NW2d 408 (2008). Underlying questions of law are reviewed de novo, *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003), while a trial court's factual findings are reviewed for clear error, MCR 2.613(C); *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). "A trial court may grant a new trial to a criminal defendant on the basis of any ground that would support reversal on appeal or because it believes that the verdict has resulted in a miscarriage of justice." *People v Jones*, 236 Mich App 396, 404; 600 NW2d 652 (1999), citing MCR 6.431(B). Newly discovered evidence does not require a new trial when it would merely be used for impeachment purposes or when it relates only to a witness's credibility. *People v Davis*, 199 Mich App 502, 516; 503 NW2d 457 (1993).

### B. NEW TRIAL

A new trial is warranted on the basis of newly discovered evidence when the defendant satisfies a four-part test: "(1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692, quoting *People v Johnson*, 451 Mich 115, 118 n 6; 545 NW2d 637 (1996).

At issue in this case is whether Hudson's testimony satisfied the first element of this test, i.e., whether his testimony was newly discovered. Hudson chose to invoke his Fifth Amendment right not to incriminate himself and therefore did not testify at trial. After trial, at which defendant was convicted and Hudson was acquitted, Hud-

son made statements that Evans possessed a gun and struggled with defendant at the time of the shooting and that Myers perpetrated the actual shooting of Evans, not defendant. Defendant did not prepare a brief on appeal, but argued before the trial court that Hudson's posttrial statements constituted newly discovered evidence. According to the prosecution, Hudson's posttrial statements did not constitute newly discovered evidence, but were merely newly available evidence, which is not sufficient to warrant a new trial. Relying on the majority of federal circuit courts that have considered this issue, the prosecution argues that newly available evidence does not equate with newly discovered evidence and, as a consequence, the trial court's order granting defendant a new trial on the basis of Hudson's statements should be reversed. For reasons that we will explain more fully later, we agree with the majority of federal circuit courts that have decided this issue,[6] and we conclude that while Hudson's proffered testimony was newly available evidence, it was not newly discovered evidence sufficient to warrant a new trial. Accordingly, we hold that defendant has failed to establish the first element in the four-part test set forth by our Supreme Court in *Cress* to determine whether a new trial is warranted on the basis of newly discovered evidence.

Pursuant to FR Crim P 33,[7] nearly all the federal circuits have articulated the same test to determine whether a new trial is warranted on the basis of newly discovered evidence.

---

[6] Neither this Court nor our Supreme Court has decided this issue. Therefore, it is proper to consider federal circuit court decisions as persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[7] FR Crim P 33 states:

(a) Defendant's Motion. Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

> Each [circuit] essentially requires that: (1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal. [*United States v Owen*, 500 F3d 83, 88 (CA 2, 2007).]

Thus, the test adopted by the federal courts in interpreting FR Crim P 33 essentially mirrors the test for a new trial on the basis of newly discovered evidence that our Supreme Court articulated in *Cress*. See *Cress*, 468 Mich at 692.

A majority of federal circuits have concluded that a codefendant's posttrial or postconviction willingness to provide exculpatory testimony constitutes newly available evidence, not newly discovered evidence, and that if the defendant knew or should have known of the evidence before or during trial, the evidence was not discovered after trial and a new trial is not warranted:

> [A] decided majority of circuits have held that, when a defendant is aware that his codefendant could provide exculpatory testimony but is unable to obtain that testimony because the codefendant invokes his privilege against self-incrimination prior to and during trial, the codefendant's postconviction statement exculpating the defendant is not "newly discovered evidence" within the meaning of Rule 33. [*Owen*, 500 F3d at 88.]

---

(b) Time to File.

(1) *Newly Discovered Evidence.* Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) *Other Grounds.* Any motion for a new trial grounded on any . reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Our review of the federal circuit court caselaw regarding this issue confirms that most federal circuit courts agree that newly available evidence is not synonymous with newly discovered evidence sufficient to warrant a new trial.[8] See, e.g., *United States v Lofton*, 333 F3d 874, 875-876 (CA 8, 2003) (holding that belated exculpatory testimony by a codefendant who did not testify at trial was not newly discovered evidence warranting the granting of a new trial); *United States v Jasin*, 280 F3d 355, 368 (CA 3, 2002) (following "the majority rule in concluding that a codefendant's testimony known to the defendant at the time of trial cannot be considered 'newly discovered evidence' under Rule 33, regardless of the codefendant's unavailability during trial because of invocation of his Fifth Amendment privilege"); *United States v Theodosopoulos*, 48 F3d 1438, 1448-1449 (CA 7, 1995) (holding that evidence was not newly discovered when the defendant was aware of the witness's testimony during trial); *United States v Glover*, 21 F3d 133, 138 (CA 6, 1994) (holding that evidence was not newly discovered when the defendant was aware of the evidence before trial, but the witness asserted his privilege against self-incrimination when called to testify at the defendant's trial); *United States v Muldrow*, 19 F3d 1332, 1339 (CA 10, 1994) (holding that "[i]f a former codefendant who originally chose not to testify subsequently comes forward and offers testimony exculpating a defendant, the evidence is not newly discovered if the defendant was aware of the proposed testimony prior to trial"); *United States v Reyes-Alvarado*, 963 F2d 1184, 1188 (CA 9, 1992) (affirming the view

---

[8] See, generally, Note, *Interpreting the phrase "newly discovered evidence": May previously unavailable exculpatory testimony serve as the basis for a motion for a new trial under Rule 33?*, 77 Fordham L R 1095 (2008).

that when a defendant who chose not to testify subsequently comes forward to offer testimony exculpating a codefendant, the evidence is not newly discovered); *United States v DiBernardo*, 880 F2d 1216, 1224 (CA 11, 1989) (holding that newly available testimony of a witness was not considered newly discovered evidence when the defendant was aware of the evidence before trial); *United States v Metz*, 652 F2d 478, 480 (CA 5, 1981) (holding that because defense counsel was aware of the codefendant's testimony before trial, that testimony could not be considered newly discovered even if the codefendant was unavailable to testify at their joint trial because he invoked the Fifth Amendment).

In *Owen*, the United States Court of Appeals for the Second Circuit based its decision that newly available evidence did not constitute newly discovered evidence on the defendant's awareness of the evidence before trial and the plain meaning of the word "discover":

> One does not "discover" evidence after trial that one was *aware of* prior to trial. To hold otherwise stretches the meaning of the word "discover" beyond its common understanding. *See Webster's Third New Int'l Dictionary* 647 (2002) (defining "discover" as "to make known (something secret, hidden, unknown, or previously unnoticed)"). We are not inclined to expand the scope of Rule 33 beyond its textual limits. *See Jasin*, 280 F.3d at 368 (noting that [the] rule that codefendant's testimony known to defendant at trial cannot be newly discovered "is anchored in the plain meaning of the text of Rule 33.... The unambiguous language of Rule 33 ... contemplates granting of a new trial on the ground of 'newly discovered evidence' but says nothing about newly available evidence") .... [*Owen*, 500 F3d at 89-90.]

Other federal circuits that have rejected the notion that newly available evidence constitutes newly discovered evidence have recognized that a defendant's

awareness of the existence of evidence affects the determination regarding whether evidence was newly discovered or merely newly available. As the Sixth Circuit noted in *United States v Turns*, 198 F3d 584, 587 (CA 6, 2000), "[t]he key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue. A witness's shifting desire to testify truthfully does not make that witness's testimony 'newly discovered' evidence." Similarly, the Sixth Circuit stated in *Glover*: "[The defendant] acknowledges that he was well aware of [the witness's] testimony prior to trial. . . . While [the witness's] testimony may have been newly available, it was not in fact 'newly discovered evidence' within the meaning of Rule 33." *Glover*, 21 F3d at 138. In addition, in *DiBernardo*, the Eleventh Circuit affirmed the denial of the defendant's motion for new trial, concluding that there was not newly discovered evidence sufficient to warrant a new trial: "Here, [the defendant was] well aware of [the witness's] proposed testimony prior to trial. Therefore, the testimony cannot be deemed 'newly discovered evidence' within the meaning of Rule 33." *DiBernardo*, 880 F2d at 1224.

This Court similarly has a long history of rejecting defendants' claims that evidence that the defendant knew existed before trial constituted newly discovered evidence. As far back as *People v Lewis*, 31 Mich App 433, 437; 188 NW2d 107 (1971), this Court stated:

> Defendant next claims a right to a new trial based on newly-discovered evidence. Mr. Warren, a fellow inmate of defendant at Jackson Prison before trial, issued a sworn statement alleging that the trial testimony of one Mr. Fisk was a complete fabrication. However, this sworn statement also admits that defendant was well aware of Warren's

information prior to trial. This information cannot be classified as newly discovered.

There are also legal policy considerations that support the conclusion that a codefendant's posttrial testimony does not constitute newly discovered evidence when the defendant was aware of the evidence before trial. The first of these legal policy considerations involves the lack of reliability of a codefendant's posttrial statements and the concern that courts might encourage perjury by granting a new trial to another codefendant on the basis of such unreliable evidence. In *Jasin*, the Third Circuit explained this policy consideration:

> Courts generally consider exculpatory testimony offered by codefendants after they have been sentenced to be inherently suspect. Indeed, "a court must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavailable only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *United States v. Jacobs*, 475 F.2d 270, 286 n. 33 (2d Cir.1973). The rationale for casting a skeptical eye on such exculpatory testimony is manifest.
>
> "It would encourage perjury to allow a new trial once co-defendants have determined that testifying is no longer harmful to themselves. They may say whatever they think might help their co-defendant, even to the point of pinning all the guilt on themselves, knowing they are safe from retrial. Such testimony would be untrustworthy and should not be encouraged." [*Jasin*, 280 F3d at 365, quoting *Reyes-Alvarado*, 963 F2d at 1188.]

Although defendant's codefendant in this case was acquitted rather than convicted, the policy rationale against encouraging perjury is no less applicable. Irrespective of whether a codefendant's trial ends in an acquittal or a conviction, the codefendant cannot be retried, and in either case posttrial testimony from a

codefendant would be equally untrustworthy. Hudson's testimony would be no more trustworthy than the testimony of a codefendant who had been convicted.

Another legal policy consideration that supports the conclusion that newly available evidence does not constitute newly discovered evidence concerns the potential for defendants to engage in a form of legal gamesmanship through "judicial sandbagging." In *Turns*, the Sixth Circuit explained this concern:

> "Baumann's evidence is not newly discovered because allowing criminal defendants to raise such allegations [i.e., that an uncalled witness's proposed testimony is newly discovered evidence] after a judgment of conviction has been entered . . . would permit them to "sandbag" the fairness of the trial by withholding or failing to seek material, probative evidence and later attempting to collaterally attack their convictions . . . ." [*Turns*, 198 F3d at 588, quoting *Baumann v United States*, 692 F2d 565, 580 (CA 9, 1982).]

Although the majority of federal circuit courts have ruled that that a codefendant's posttrial or postconviction testimony did not constitute newly discovered evidence sufficient to warrant a new trial when the defendant was aware of the evidence before trial, the First Circuit has reached a contrary conclusion on this issue. See *United States v Montilla-Rivera*, 115 F3d 1060, 1066 (CA 1, 1997). In *Montilla-Rivera*, the First Circuit held that the trial court erred by denying the defendant's motion for new trial, ruling that the posttrial testimony of codefendants who did not testify at trial because they exercised their Fifth Amendment privilege constituted newly discovered evidence. In so ruling, the First Circuit stated that its decision was based on years of precedent: "This circuit has, for almost twenty years, held that the 'newly discovered' language of Rule 33 encompasses evidence that was 'unavailable.' " *Id.* at 1066, citing *Vega Pelegrina v United States*, 601 F2d 18, 21 (CA 1, 1979). The First Circuit

reasoned that the codefendants were not available to testify given the defendant's inability to compel their testimony in light of their assertion of the Fifth Amendment privilege and stated that "there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence."[9] *Montilla-Rivera*, 115 F3d at 1066.

We are not persuaded by the First Circuit's minority position regarding this issue. To the contrary, we are persuaded by the majority of federal circuit courts that a codefendant's posttrial or postconviction testimony does not constitute newly discovered evidence sufficient to warrant a new trial when the defendant was aware of the evidence before trial, and we hold that MCR 6.431(B)[10] does not authorize the grant of a new trial on the basis of such evidence because it is not newly discovered, but merely newly available. In so holding, we are mindful that courts "must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavail[a]ble only because a codefendant, since convicted, had availed himself of his privilege not to testify." *Jacobs*, 475 F2d at 286 n 33. Although neither this Court nor our Supreme Court has

---

[9] As the Second Circuit observed in *Owen*, "the first prong of the First Circuit's Rule 33 test is broader than that of the other circuits, requiring that 'the evidence was unknown *or unavailable* to the defendant at [the] time of trial.' " *Owen*, 500 F3d at 89, quoting *Montilla-Rivera*, 115 F3d at 1066.

[10] MCR 6.431(B) governs motions for new trial and provides, in relevant part:

> Reasons for Granting. On the defendant's motion, the court may order a new trial on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice. The court must state its reasons for granting or denying a new trial orally on the record or in a written ruling made a part of the record.

issued an opinion regarding this issue, we note that our Supreme Court has stated that the first prong of the test to determine whether a defendant is entitled to a new trial on the basis of newly discovered evidence is whether " 'the evidence itself, not merely its materiality, was newly discovered[.]' " *Cress*, 468 Mich at 692, quoting *Johnson*, 451 Mich at 118 n 6. This is consistent with the holding in *Owen* that "[o]ne does not 'discover' evidence after trial that one was *aware of* prior to trial. To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding." *Owen*, 500 F3d at 89-90.

We are aware of the fact that when a codefendant invokes the privilege against self-incrimination and refuses to testify, a defendant can be denied the benefit of any potentially exculpatory testimony the codefendant might have provided. See *Owen*, 500 F3d at 91. This is a consequence of the Fifth Amendment privilege.[11] However, we stress that in such cases there exist proper procedural remedies. As noted in *Owen*, a trial court could grant a severance if it is persuaded that the deprivation would cause the defendant prejudice. *Id.* The court in *Owen* also noted that in the severed trial the prosecutor could confer limited immunity on the codefendant so that the codefendant might testify truthfully and that, as a last resort, a defendant could take the stand and convey his or her story. *Id.* at 92. Indeed, pursuant to MCR 6.121(C), in this case, defendant would have been entitled to a severance if he had made a "showing that severance is necessary to avoid prejudice to substantial rights of the defendant." This is not a case in which defendant had no clue of the existence of Hudson's testimony before trial. Our re-

---

[11] Another consequence of invocation of the Fifth Amendment privilege is that a defendant may not comment on a codefendant's refusal to take the stand. See *Owen*, 500 F3d at 92 n 6.

view of the record leads us to conclude that defendant
was, or should have been, aware of Hudson's testimony
before trial and that he should have engaged in due
diligence and employed the proper procedural avenues,
including trial severance and limited immunity for
Hudson, to secure Hudson's testimony at trial.[12] Had he
done so, he would not have been denied the benefit of
any potentially exculpatory testimony that Hudson
could have offered. We decline to characterize Hudson's
testimony as newly discovered evidence because to do so
would negate defendant's duty to engage in due dili-
gence to secure the proffered testimony and effectively
condone defendant's attempt at judicial sandbagging.

Having adopted the view of the majority of federal
circuits, we must determine what defendant knew about
the evidence at issue before and during trial. The Second
Circuit in *Owen* held that the pertinent inquiry is whether
the defendant knew or should have known that the
codefendant could offer material testimony regarding the
defendant's role in the charged crime. *Owen*, 500 F3d at
91. Application of this test requires an examination of the
facts presented in this case to ascertain whether defen-
dant knew or should have known that his codefendant
had exculpatory information.

Examination of the record in the instant case reveals
that although Hudson testified at the hearing on defen-
dant's motion for a new trial that he had never spoken

_____

[12] We observe that we would reach the same result in this case even if
we were to adopt the First Circuit's reasoning because the record in this
case does not support a conclusion that "the witness was unavailable
despite [the defendant's] exercising due diligence." *Montillo-Rivera*, 115
F3d at 1066. With due diligence, defendant could have remedied the
potential denial of the benefit of Hudson's exculpatory evidence by
seeking trial severance and asking the prosecutor to grant Hudson
limited immunity so that Hudson could testify truthfully without fear of
self-incrimination.

with defense counsel about the case until it was over, defendant knew or should have known that Hudson could have offered material testimony regarding defendant's role in the charged crime. Defendant and Hudson had known each other since childhood. Hudson testified that he and defendant were close friends. According to Hudson, he was present with defendant at the scene of the shooting. Even if Hudson and defendant never had a conversation about Hudson's testimony before or during their trial, defendant was certainly aware at all times that Hudson had the ability to provide his proffered testimony.[13] Therefore, the record clearly leads us to conclude that defendant knew or should have known before trial that Hudson could have provided the testimony.

In holding that newly available evidence does not constitute newly discovered evidence sufficient to warrant a new trial, we note that our holding does not preclude the possibility that a codefendant's posttrial or postconviction exculpatory statements might qualify as newly discovered evidence under MCR 6.431(B). There may be cases in which such evidence does indeed constitute newly discovered evidence. However, in this case, defendant knew or should have known that his codefendant could offer material testimony regarding defendant's role in the charged crime; therefore, defendant cannot claim that he "discovered" that evidence only after trial. Consequently, because defendant knew or should have known that his codefendant could offer material testimony about defendant's role in the charged crime, his inability or unwillingness to procure that testimony before or during trial should not be redressed by granting him a new trial.

---

[13] No one asked Hudson if he had spoken to defendant about his testimony before or during trial.

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Meter, P.J., concurred.

Shapiro, J. (*concurring*). I concur in the result in this case because I do not believe that defendant provided an adequate basis for the trial court to grant his motion for a new trial pursuant to MCR 6.431(B), whether we apply the test employed by the majority of federal circuits or the test enunciated by the United States Court of Appeals for the First Circuit. Therefore, I do not believe we need to reach the question of which test to apply. However, the majority having reached it, I respectfully suggest that the more appropriate test is that enunciated by the First Circuit.

In *United States v Montilla-Rivera*, 115 F3d 1060, 1066 (CA 1, 1997), the First Circuit held that "the better rule is not to categorically exclude the testimony of a codefendant who asserted his Fifth Amendment privilege at trial under the first prong but to consider it, albeit with great skepticism . . . ." The court recognized that "[i]t is true that there is a greater need for caution in considering [such] motions where the new evidence comes from a codefendant who was 'unavailable' at trial because he chose to exercise his privilege." *Id.* Indeed, the First Circuit did not order a new trial, but merely directed that the trial court hold a hearing to hear the "new" evidence, and further noted that even having such a hearing is "[not] required in the usual course."[1]

---

[1] In *Montilla-Rivera*, the court reversed the trial court's denial of a motion for a new trial, but only after a careful review of the facts and circumstances of the case. *Montilla-Rivera*, 115 F3d at 1067-1068. First, the court noted that although the evidence against the defendant was sufficient, "[t]he evidence [was] thin . . . ." *Id.* at 1064. Second, the court

*Id.* at 1067. The First Circuit's approach would not open the floodgates for new trials on the basis of "newly available" codefendant testimony. Rather, it would take the prudent and limited step of not foreclosing the possibility that justice may require the granting of a new trial in a particular case involving newly available evidence.

In this case, defendant is not entitled to a new trial under the First Circuit's test. First, there was other evidence admitted that showed the victim was armed. Thus, defendant was able to present evidence in support of his self-defense claim. Second, defense counsel did not interview or attempt to interview the codefendant, thus undercutting the likelihood that there was a good-faith belief that he could offer exculpatory testimony. Third, there was no request for severance or for the codefendant's trial to occur first, a mechanism that might have avoided the Fifth Amendment problem. Fourth, there was no attempt to call the codefendant at trial and to require him to assert his Fifth Amendment privilege outside the presence of the jury. Fifth, there was no offer of proof at trial about what defendant believed his codefendant could testify to if he did not assert his Fifth Amendment privilege. These failures

noted that the defendant had "diligently attempted to secure [the codefendants'] testimony . . . ." *Id.* at 1065. The defendant's attorney tried on two separate occasions to interview the codefendants, but they refused to speak with him. *Id.* at 1065 n 3. He also moved to have the two codefendants subpoenaed to testify, and his client had "insisted that the testimony would exculpate him rather than hurt him." *Id.* At the defendant's trial, the codefendants informed the court that they would not testify despite the defendant's request, and the court noted that each of the codefendants' attorneys had advised his client not to testify because the testimony might be incriminating with regard to other transactions and because the codefendants were still awaiting sentencing. *Id.* at 1065. Finally, the court noted that the new testimony was neither cumulative nor implausible. *Id.* at 1066.

strongly suggest that the issue in this case related more to the desirability of an appellate parachute rather than the existence of known exculpatory testimony that was genuinely unavailable before defendant's conviction.

I agree with the majority that postconviction claims of exculpatory testimony from a codefendant should be viewed with a high degree of suspicion. However, that is a matter best addressed on a case-by-case basis and not with a bright-line rule. I also recognize that the majority does not view the rule it adopts today as foreclosing a case-by-case approach. Indeed, the majority makes this clear by positing that "[t]here may be cases in which [a codefendant's posttrial or postconviction exculpatory statement] does indeed constitute newly discovered evidence." I believe the majority and I are in agreement that a trial court should not be precluded from granting a new trial when the defendant made appropriate efforts to obtain the testimony at trial and the trial court, in an exercise of sound discretion after hearing all the evidence, concluded that a miscarriage of justice may have occurred. I am concerned, however, that this critical exception to the rule otherwise excluding newly available evidence might be lost in subsequent cases. I believe that in order to assure that it is not, the more prudent course would be to adopt the First Circuit's standard, which more explicitly provides for the exception.