# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

MARWIN TERRELLE MCHENRY,

　　　　　Defendant-Appellant.

UNPUBLISHED
January 26, 2016

No. 318852
Wayne Circuit Court
LC No. 13-004171-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of assault with intent to commit murder, MCL 750.83, three counts of assault with a dangerous weapon ("felonious assault"), MCL 750.82, and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant to 14 to 25 years' imprisonment for each assault with intent to commit murder conviction, and 1 to 4 years' imprisonment for each felonious assault conviction, to be served concurrently with each other but consecutive to a sentence of two years' imprisonment for the felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a nonfatal shooting that occurred on July 10, 2012, in Detroit, Michigan. That afternoon, complainants Onjdua Bohanen, Alyssa Bohanen, and Debbie Bohanen drove to Tanisha Harris's house with three other women (collectively, "the Bohanens") to fight Harris and her sister, Alexis Woodward. The Bohanens were engaged in an ongoing dispute with Harris and Alexis, which had resulted in a physical altercation two weeks earlier.

When the Bohanens initially drove past Alexis's and Harris's home, Harris, Alexis, Tanisha Woodward (Alexis's and Harris's mother), their cousin Sonovia, and two other women

-1-

(collectively, "the Woodwards") were outside.[1] The Woodwards threw canned food, sticks, and rocks at the Bohanens' vehicle.

The Bohanens parked their car two blocks away from the Woodwards' house, and most of the group started walking toward the Woodwards, who were still outside their home. The Woodwards also began walking toward the Bohanens. When the two groups were within close proximity of each other, Onjdua, Alyssa, and Debbie saw defendant (Harris's boyfriend) emerge from behind a red car, which was parked on the side of the Woodward home, with a rifle. The Bohanens ran, and defendant fired multiple shots toward them, striking Onjdua in the back of the leg.

All three complainants identified defendant as the gunman in photographic lineups and at trial. Harris, however, testified that the shooter was her brother, James Bosely, not defendant. The prosecution impeached Harris with prior inconsistent testimony that she gave during an earlier juvenile court proceeding concerning charges that Alexis was facing for her involvement with the shooting. During the juvenile proceedings, Harris claimed that she did not see the shooter and did not know who he was. At defendant's trial, Harris admitted she lied in the juvenile proceeding to protect James.

Following defendant's convictions, the Wayne County Prosecutor's Office received new information regarding the case and initiated an investigation. During that investigation, Harris, Woodward, and Alexis all testified pursuant to investigative subpoenas, during which they identified James as the shooter. Based on this testimony, defendant filed a motion to remand in this Court, indicating that he would file a motion for a new trial on the basis of newly discovered evidence in the lower court if this Court granted his motion, which we did.[2]

On remand, defendant filed a motion for a new trial. The trial court held a hearing on defendant's motion, during which it heard testimony from Woodward and Alexis. Both witnesses provided inconsistent or contradictory testimony, and the prosecutor impeached numerous portions of their testimony with previous statements from Alexis's juvenile proceeding and the investigative subpoenas.

Ultimately, the trial court denied defendant's motion for a new trial. The court concluded that defendant had failed to establish the four elements necessary to warrant a new trial, finding that the testimony was not newly discovered and was cumulative to Harris's previous testimony. Additionally, it highlighted specific examples of the inconsistencies in Woodward's and Alexis's testimony and the various statements with which the prosecutor had impeached them. Given these discrepancies, it "found [Woodward and Alexis] to be credibly not credible. They were

---

[1] In the interest of clarity, Tanisha Harris will be referred to as "Harris" and Tanisha Woodward will be referred to as "Woodward" in this opinion. However, the entire group will be referred to as "the Woodwards."

[2] *People v McHenry*, unpublished order of the Court of Appeals, entered May 27, 2015 (Docket No. 318852).

inconsistent.  When they were questioned by [defendant's appellate counsel,] they had responses. When they were questioned by the prosecutor, they had memory problems."  Accordingly, it determined that the testimony would not have made any difference upon retrial.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant contends that the prosecution presented insufficient evidence to support his convictions for assault with intent to commit murder, felonious assault, and felony-firearm. However, he only contests the identity element of his convictions, arguing that the prosecution failed to prove his identity as the gunman beyond a reasonable doubt.  We disagree.

### A.  STANDARD OF REVIEW

We review a challenge to the sufficiency of the evidence *de novo*.  *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010).  We review the evidence in the light most favorable to the prosecution and determine whether a rational jury could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *Id*. at 175. "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime."  *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).  We resolve all conflicts in the evidence in favor of the prosecution and will not interfere with the trier of fact's "determinations regarding the weight of evidence and the credibility of the witnesses."  *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

### B.  ANALYSIS

 "[I]t is well settled that identity is an element of every offense."  *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).  Identity may be established by either direct testimony or circumstantial evidence.  *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967).  Likewise, "positive identification by witnesses may be sufficient to support a conviction of a crime."  *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000).  Further, "credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id*.

Onjdua identified defendant as the gunman hours after the shooting while she was still in the hospital.  Although she could not make out the man's face when he initially emerged from behind the red car, she had an opportunity to view the shooter when he approached the group and aimed his weapon at the Bohanens before she ran from the scene.  Onjdua knew defendant was Harris's boyfriend and that he went by the name "Mo."  She had previously seen defendant in person on another occasion and had seen his picture on Facebook.  Alyssa, who had known defendant for more than 10 years, also identified him as the man who came out from behind the red car and shot at the group.  She further testified that defendant called her 45 minutes to an hour after the shooting to deny involvement.  The jury could reasonably infer from this phone call that defendant had some connection with—or, at the very least, knowledge of—the shooting. See *Williams*, 268 Mich App at 419.  Debbie, who had seen defendant in person once before, also testified that he was the shooter and that James was not at the scene.  Further, all three witnesses identified defendant in separate photographic lineups.

Defendant asserts that the evidence did not prove beyond a reasonable doubt that he was the shooter because the witnesses' testimony was neither credible nor reliable. He emphasizes that Onjdua initially told police that she believed that James could be the shooter, that Alyssa and Debbie gave conflicting testimony regarding defendant's clothing, and that Harris, who testified that James was the shooter, was the most reliable witness. However, Onjdua explained that she was distracted by her injuries when she first spoke to the police. Further, these inconsistencies are relevant to the finder of fact's assessment of the weight and credibility of the identification testimony, and we will not reassess that determination on appeal. *Davis*, 241 Mich App at 700; see also *Unger*, 278 Mich App at 222. Likewise, the jury could reasonably credit the complainants' testimony over Harris's claim that her brother was the gunman, especially given Harris's admission that she provided false testimony about the identity of the shooter during a prior proceeding. See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999) ("[A] jury is free to believe or disbelieve, in whole or in part, any of the evidence presented.")

Viewing the complainants' identification testimony in the light most favorable to the prosecution, *Harverson*, 291 Mich App at 175-176, and resolving all conflicts in favor of the prosecution, *Unger*, 278 Mich App at 222, a reasonable trier of fact could conclude that defendant was the gunman. Thus, we reject defendant's argument that his convictions were supported by insufficient evidence.

## III. CRUEL OR UNUSUAL PUNISHMENT

Defendant next argues that the sentences for his assault with intent to commit murder convictions constitute cruel or unusual punishment. We disagree.

### A. STANDARD OF REVIEW

To preserve a claim of constitutional error in sentencing, a defendant must object in the trial court. *People v McLaughlin*, 258 Mich App 635, 669-670; 672 NW2d 860 (2003). Although defendant maintained his innocence at sentencing, he did not object on the ground that his sentences amounted to cruel and/or unusual punishment. Thus, this issue is unpreserved and reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). To demonstrate such an error, a defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) "the plain error affected [the defendant's] substantial rights," which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. at 763. Even if a defendant establishes a plain error that affected his substantial rights, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original).

### B. ANALYSIS

The United States Constitution prohibits "cruel and unusual punishments," and the Michigan Constitution forbids "cruel or unusual punishment." US Const, Am VIII; Const 1963, art 1, § 16. Michigan's prohibition against cruel or unusual punishment is interpreted more

broadly than the federal prohibition. *People v Bullock*, 440 Mich 15, 30-35; 485 NW2d 866 (1992). Accordingly, if a sentence is constitutional under Michigan's Constitution, it is also constitutional under the federal Constitution. *People v Nunez*, 242 Mich App 610, 618 n 2; 619 NW2d 550 (2000).

"In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states." *People v Masroor*, ___ Mich App at ___, ___; ___ NW2d ___ (2015) (Docket No. 322280); slip op at 23; see also *People v Dipiazza*, 286 Mich App 137, 153-154; 778 NW2d 264 (2009) (also noting that this Court will consider the goal of rehabilitation in determining whether a punishment is cruel or unusual). Defendant has not demonstrated, or even argued, "that his sentences are cruel or unusual by comparing them to the penalties imposed for other crimes in this state and the same crime in other states," *id*. at ___; slip op at 23, and we are not required to search for support for a defendant's arguments, *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." [Quotation marks and citation omitted.]).

Moreover, a sentence within the range calculated under the sentencing guidelines is presumed to be proportionate, and a proportionate sentence is not cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).[3] To overcome this presumption, a defendant "must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000).

Defendant only argues on appeal that his sentences, which were well within the guidelines, are cruel or unusual given his age, the "questionable reliability" of his convictions (based on his arguments *supra* regarding the sufficiency of the evidence presented at trial), his lack of a significant criminal history, his positive family relationships, and his employment history. None of these factors constitute "unusual circumstances" sufficient to overcome the presumption of proportionality or demonstrate that his sentences are cruel or unusual. See *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997) ("find[ing] no principled reason to *require* that a judge treat similar offenses that are committed by similarly depraved

---

[3] "[U]nder the Michigan Constitution, the prohibition against cruel or unusual punishment included a prohibition on grossly disproportionate sentences. But . . . 'the constitutional concept of "proportionality" under Const 1963, art 1, § 16 is distinct from the nonconstitutional "principle of proportionality" discussed in *People v Milbourn*, 435 Mich 630, 650; 461 NW2d 1 (1990), although the concepts share common roots.' " *People v Benton*, 294 Mich App 191, 204; 817 NW2d 599 (2011) (citation omitted). See also *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 23-25 (discussing the *Milbourn* principle of proportionality and adopting that standard as the method for reviewing the reasonableness of a sentence under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015)).

persons differently solely on the basis of the age of the defendant at sentencing where the Legislature has authorized the judge to impose life or *any* term of years."); *Powell*, 278 Mich App at 323 (noting that "[i]f the evidence was not legally sufficient, . . . the remedy would be to vacate [the defendant's] conviction[,]" not to remand for resentencing); *People v Daniel*, 207 Mich App 47, 54; 523 NW2d 830 (1994) (stating that the defendant's employment and lack of criminal history "are not unusual circumstances that would overcome" the presumption of proportionality).

Therefore, defendant has not demonstrated a plain error affecting his substantial rights, as he has failed to overcome the presumption of proportionality or establish that his sentences constitute cruel or unusual punishment under the circumstances.[4]

## IV. MOTION FOR A NEW TRIAL

In a supplemental brief, defendant contends that the trial court clearly erred when it found on remand that (1) the testimony of Tanisha Woodward and Alexis was not newly discovered evidence, (2) their testimony was cumulative, and (3) their testimony would not have affected the result of defendant's trial. As such, defendant argues that the court abused its discretion in denying his motion for a new trial. We disagree.

## A. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision on a motion for a new trial. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id.* at 559. We review a trial court's factual findings for clear error, but review *de novo* underlying questions of law. *Id.*, citing MCR 2.613(C). A finding "is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation marks and citation omitted).

## B. APPLICABLE LAW

---

[4] To the extent that defendant suggests that his sentences for assault with intent to commit murder are cruel and/or unusual when considered in combination with his consecutive two-year sentence for felony-firearm, we disagree. The cumulative length of consecutive sentences is not considered when determining whether individual sentences are proportionate. Rather, each sentence is examined individually. *People v Miles*, 454 Mich 90, 95; 559 NW2d 299 (1997). As explained *supra*, defendant's sentences for assault with intent to commit murder are proportionate. Further, defendant's two-year sentence for his felony-firearm conviction does not constitute cruel or unusual punishment. See *Wayne County Prosecutor v Recorder's Court Judge (People v Meeks)*, 92 Mich App 433, 438-441; 285 NW2d 318 (1979) (holding that the mandatory two-year minimum term of imprisonment for felony-firearm does not constitute cruel or unusual punishment).

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence," *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012), and "the cases where [the Michigan Supreme Court] has held that there was an abuse of discretion in denying a motion based on such grounds are few and far between," *People v Rao*, 491 Mich 271, 280; 815 NW2d 105 (2012). This reluctance to grant new trials on the basis of newly discovered evidence stems from the parties' legal obligation to "secure evidence and prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *Id*. Likewise, "[i]t is the obligation of the parties to undertake all reasonable efforts to marshal *all* the relevant evidence for that trial," as "[e]vidence will not normally be allowed in installments." *Id*.

However, a new trial is warranted if the defendant shows that "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted); see also *Terrell*, 289 Mich App at 559. The defendant bears the burden of satisfying each part of the test. *Rao*, 491 Mich at 279.

## C.  APPLICATION

Here, the trial court did not abuse its discretion in denying defendant's motion for a new trial. Even if we assume, solely for the sake of argument, that Woodward's and Alexis's testimony constituted newly discovered evidence,[5] it is apparent that defendant did not establish

---

[5] It is clear that Harris's testimony was not newly discovered evidence, as she testified at defendant's trial, and appellate counsel stipulated that any testimony that she would have provided at a postconviction hearing would have been virtually identical to her trial testimony.

Additionally, it is noteworthy that "Michigan caselaw makes clear that evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *Rao*, 491 Mich at 281. "Further, Michigan courts have held that a defendant's awareness of the evidence at the time of trial precludes a finding that the evidence is newly discovered, even if the evidence is claimed to have been 'unavailable' at the time of trial." *Id*. at 282. Likewise, this Court has recognized a distinction between "newly discovered" and "newly available evidence," warning that courts "must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavail[a]ble only because a co-defendant . . . had availed himself of his privilege not to testify." *Terrell*, 289 Mich App at 567 (quotation marks and citation omitted, alteration in original).

Without fully analyzing this prong of the test, we find it important to note that Woodward initially was subpoenaed as a defense witness at defendant's trial, but defense counsel ultimately decided not to call her as a witness after Woodward's attorney informed the court that she would invoke her Fifth Amendment right to remain silent due to perjury concerns and the fact that she was still awaiting sentencing before the same trial court judge on a *nolo contendere* plea to one or more charges arising from the same incident. Similarly, defendant explained in his motion for

that the evidence was not cumulative or that it is probable that the evidence would have affected the result of his trial. *Cress*, 468 Mich at 692.

At trial, Harris testified that James arrived at the scene of the confrontation, shot at the Bohanens with a long gun after Alexis said "let that b---- go," ran back to Woodward's house, left the gun inside, and ran down the street to a cousin's house. Except for some minor differences, this testimony was virtually identical to that offered by Woodward and Alexis at the evidentiary hearing. We are unconvinced by defendant's argument that Woodward's testimony was not cumulative because Woodward had a different relationship with defendant and James than Harris, or because Woodward's motivation for testifying differed from Harris's motive. Likewise, defendant has not provided any authority in the trial court or on appeal for the proposition that a witness's testimony is not cumulative if the witness's relationships or motivations for testifying differ from those of a previous witness. See *Payne*, 285 Mich App at 195. Thus, defendant failed to establish the second element of the *Cress* test. *Cress*, 468 Mich at 692.

Furthermore, regarding the fourth element, the trial court did not clearly err in concluding that Woodward's and Alexis's testimony did not make a different result probable on retrial. *Cress*, 468 Mich at 692. As the trial court noted, the testimony of both witnesses was inconsistent and unconvincing, and it repeatedly contradicted their previous sworn testimony. Both admitted to lying under oath, for various reasons, when they found it necessary or expedient. Woodward and Alexis also contradicted each other at the hearing, particularly on the issue of whether Woodward was present for the shooting.[6] In addition, Alexis initially lied during the July 23, 2015 postconviction hearing when she testified regarding a written statement that she allegedly gave to police officers at her house on February 15, 2014. She later admitted on cross-examination that she had written the statement herself, had it notarized at a bank, and then gave it to Harris, believing that Harris would give it to the police. Given these credibility issues, even defendant's appellate counsel acknowledged at the hearing on defendant's motion that he "will be the first to tell this Court and acknowledge that [Alexis] was not a good witness for the defense. She was not helpful in the least bit."[7]

---

a new trial that Alexis did not testify at defendant's trial, and was not called as a defense witness, because she was facing prosecution in juvenile court for charges related to the July 10, 2012 incident, not because defendant was unaware of her potential testimony. Therefore, it is apparent that defendant was, at a minimum, *aware* of Woodward's and Alexis's potential testimony at the time of his trial. See *Rao*, 491 Mich at 281.

[6] Additionally, we note that the testimony of both women—which indicated that defendant was not involved in the incident at all—was undermined by the handwritten letter that defendant sent to the court following his conviction, in which he described the confrontation, identified James as the shooter, said that he had heard Alexis tell James to shoot, and recalled hearing James fire four or five shots.

[7] Counsel ultimately argued that the trial court should consider Alexis's testimony to the extent that it was corroborated by Woodward's testimony.

In sum, we are not definitely and firmly convinced that the trial court made a mistake in finding that a jury would fail to credit Woodard's and Alexis's dubious and impeached testimony upon retrial. *Reese*, 491 Mich at 139. Thus, the trial court's denial of defendant's motion for a new trial did not fall outside the range of principled outcomes. *Terrell*, 289 Mich App at 558.

## V. CONCLUSION

Defendant has failed to establish that his convictions were supported by insufficient evidence, or that the sentences imposed for his assault with intent to commit murder convictions constituted cruel or unusual punishment. In addition, the trial court did not abuse its discretion when it denied defendant's motion for a new trial because defendant failed to establish the four elements of the *Cress* test.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood

-9-