# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
February 11, 2016

v

MARIO DUANE BROWN,

Defendant-Appellant.

No. 324364
Calhoun Circuit Court
LC No. 2014-001306-FH

Before: O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

Defendant, Mario Duane Brown, appeals as of right his convictions, following a jury trial, of two counts of armed robbery. MCL 750.529. The trial court sentenced Brown as a fourth-offense habitual offender, MCL 769.12, to serve 15 to 40 years' imprisonment. We affirm.

## I. BACKGROUND FACTS

Shanekia Melton testified about the robbery of a Dollar General store pursuant to a plea agreement. According to Melton, she was dating defendant's cousin, Jakayla Atchison, and Melton lived with defendant, Atchison, and defendant's cousin Artis Holmes. In December 2013, Melton and defendant discussed robbing a nearby Dollar General store. Atchison testified that she overheard Melton talking with defendant and another man, Shammon Mos, about robbing the Dollar General store about two days before the robbery and thought it was a joke.

According to Melton, she, defendant, Mos, and Zachariah Coats-Brewer robbed the Dollar General store at about 9:45 p.m. on December 18, 2013. They all wore gloves and face coverings. The group waited until there were no customers inside the store, then Melton opened the door and they all ran in. Defendant brandished a plastic gun and asked the workers to give him money out of the safe. Coats-Brewer stood by the entrance while Melton and defendant took cash.

Corrissa Archer testified that she was working at the Doller General store at the time of the robbery. According to Archer, the robbers wore masks and she could not see their faces. A man approached Archer, pointed a gun at her, and asked for the safe. When Archer responded that only the manager could open the safe, two of the men took her to the manager's office and broke down the door. Terri Richards, the manager, testified that she put money from the safe

-1-

into a bag for the man with the gun, who was about 5'7" or 5'8" tall, while a woman "ransacked" the office. The Department of Corrections' records indicate that defendant is 5'9" tall.

Albion Police Officer Mike Kolassa obtained surveillance footage from the store, which was entered into evidence and played for the jury. According to Detective Luis Tejeda, he reviewed the security video but was not able to identify the suspects. However, after Archer told an officer she suspected that Melton was one of the robbers, he reviewed the video again and realized that one of the robbers wore pants similar to pants that he had seen Melton wear. Detective Tejeda suspected that Holmes may have participated in the robbery because he lived with Melton and had previously robbed a Dollar General store. However, after further consideration, Detective Tejeda ruled out Holmes as a suspect because of the sizes and heights of the people in the video.

On cross-examination, Melton testified that she had initially lied to police when she denied involvement in the robbery. However, Melton testified that she realized that police could possibly prove she was involved in the robbery. Melton was offered a plea deal if she agreed to testify, under which she would be charged with larceny from the person, a ten-year felony, instead of armed robbery, which had a maximum sentence of life in prison. After she found out that she could face life in prison, she began "telling on everybody." When asked whether she would rather lie or serve life in prison, Melton responded, "I wouldn't do life."

Defense counsel argued that Melton was lying about defendant's involvement and that Holmes was actually involved in the robbery. The jury found defendant guilty as described above.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant contends his conviction is against the great weight of the evidence because Melton's testimony was too incredible to support his conviction. We disagree.

A jury's verdict is against the great weight of the evidence if the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Generally, this Court reviews the trial court's decision on a motion for a new trial for an abuse of discretion. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). However, defendant did not raise this issue before the trial court. To preserve a claim that a verdict was against the great weight of the evidence, the defendant must move for a new trial before the trial court. *Cameron*, 291 Mich App at 617. Because defendant has not preserved this claim, we will review it for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it was clear or obvious, and it affected the defendant's substantial rights if it affected the outcome of his or her trial. *Id*.

Identity is an element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). This Court does not generally decide questions involving the credibility of identification testimony on appeal. *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998). We will only overturn a credibility determination if the testimony contradicts

-2-

indisputable physical facts or laws, defies physical realities, is inherently implausible, or is "seriously impeached" in a case "marked by uncertainties and discrepancies." *Id*. at 643-644.

In this case, defense counsel elicited that Melton had reasons to dislike defendant, including that he owed her money, and had threatened her regarding her relationship with Atchison, that she had received a considerable plea deal for her testimony that reduced her potential sentence from life in prison, and that Melton would rather lie than face life imprisonment. However, the case was not marked with uncertainties and discrepancies. Atchison's and Archer's testimonies corroborated Melton's testimony, and the jury was also able to review the surveillance tape and consider defendant's height and frame in the courtroom. We conclude that Melton's testimony was not so seriously impeached that we must overturn the jury's credibility determination.

## III. PROSECUTORIAL MISCONDUCT

Defendant contends that the prosecutor committed misconduct by denigrating the defense. We disagree.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). See *People v Bahoda*, 448 Mich 261, 266-267; 531 NW2d 659 (1995). We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context, and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

The prosecutor may not "denigrat[e] a defendant with intemperate and prejudicial remarks." *Bahoda*, 448 Mich at 283. The prosecutor may also not suggest that defense counsel is attempting to mislead the jury. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

> The prosecutor may not question defense counsel's veracity. When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [*Id*. (quotation marks and citation omitted).]

In this case, defense counsel used an elaborate story involving a castle, a princess, and a man swimming across a moat to illustrate the point that, without Melton's testimony, there would be no case against defendant. During rebuttal, the prosecution made the following statements:

> [*Prosecutor*]: . . . All right, Ladies and Gentlemen, the medieval stories, those things all very cute and clever, Ladies and Gentlemen. And again, I have all the respect in the world for [defense counsel], and he's doing exactly what he's paid to do; however, at the end of the day, the facts are the facts. He can . . .

-3-

* * *

[*Defense Counsel*]:     I'm going to object, Judge.  We are both paid to be here.

*The Court*:     Well, that's regardless.  Go ahead, [prosecutor].

[*Prosecutor*]: Thank you.  At the end of the day, the facts are the facts, and distorting the facts and calling [Melton] and raising your voice saying, "She's a liar, she's a thief, don't believe her," you can say that all day long, but the facts are what they are, Ladies and Gentlemen.

Defendant contends that the prosecutor's statement that defense counsel was "doing exactly what he's paid to do" was improper.  We agree that the remark was improper, but we conclude that it did not deprive defendant of a fair trial.

First, we conclude that this error was not of constitutional magnitude.  "[I]n order for prosecutorial misconduct to be constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *People v Blackmon*, 280 Mich App 253, 269; 761 NW2d 172 (2008) (emphasis omitted). A brief, isolated, and uninflammatory comment is not highly prejudicial.  See *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001).  In this case, the prosecutor's remark was a single, isolated comment.  It was improper, but not highly inflammatory.  We conclude that the prosecutor's improper remark did not infect the trial with unfairness.

We also conclude that the error did not likely affect the outcome of defendant's trial.  "A preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation marks omitted).  As noted above, the remark was brief and isolated.  It began with a proper response to defense counsel's argument, and the prosecutor promptly refocused on the facts of the case after defense counsel's challenge.  Additionally, we note that the trial court properly instructed the jury that it could not rest its verdict "in any way" on the attorneys' closing arguments.  We conclude that the prosecutor's improper remark does not constitute reversible error in this case.

## IV.  NEWLY DISCOVERED EVIDENCE

In a March 3, 2015 affidavit, "Zachariah Segtaun Brewer" averred that defendant "was not present nor participated in the event."  Coats-Brewer offered this affidavit after he was convicted of larceny in a building.  Defendant contends that (1) the affidavit constitutes newly discovered exculpatory evidence that warrants a new trial, and (2) defense counsel was ineffective for failing to discover and call Coats-Brewer as an exculpatory witness.  We disagree.

We note that defendant's newly discovered evidence issue is unpreserved because defendant did not move for a new trial in the trial court.  See *People v Darden*, 230 Mich App

597, 605-606; 585 NW2d 27 (1998). Additionally, when the trial court has not conducted a *Ginther*[1] hearing, this Court reviews the defendant's claim of ineffective assistance of counsel for errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

We also note that defendant's arguments are directly contradictory. Defendant contends that exculpatory evidence provided by Coats-Brewer is newly discovered because Coats-Brewer would have been unavailable to testify at trial on the basis of his right against self-incrimination, but then contends that counsel was ineffective for failing to investigate and call Coats-Brewer at trial. If Coats-Brewer was unavailable at trial, counsel could not have called him to testify. Regardless of their inconsistency, we will address defendant's arguments.

"[A] codefendant's posttrial or postconviction testimony does not constitute newly discovered evidence sufficient to warrant a new trial when the defendant was aware of the evidence before trial" because such testimony "is not newly discovered, but merely newly available." *People v Terrell*, 289 Mich App 553, 567; 797 NW2d 684 (2010). In this case, Coats-Brewer's involvement in the robbery was not new information. Melton implicated him in the robbery and later testified that he was involved. This evidence was available at trial and is merely newly available following Coats-Brewer's conviction. Additionally, we conclude that Coats-Brewer's affidavit does not make it more likely than not that no reasonable juror would have found defendant guilty. See *People v Swain*, 288 Mich App 609, 638; 794 NW2d 92 (2010) (discussing actual innocence). We reject defendant's contention that Coats-Brewer's affidavit constitutes newly discovered evidence or evidence of actual innocence.

We also reject defendant's contention that defense counsel failed to reasonably investigate and call Coats-Brewer.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must establish the factual predicate for a claim of ineffective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defense counsel's decisions to call and investigate witnesses are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). This Court must strongly presume that defense counsel acted professionally and pursued a sound trial strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

In this case, the record is devoid of any indication that counsel failed to investigate Coats-Brewer. Coats-Brewer's affidavit does not provide evidence that defense counsel failed to

---

[1] *People v Ginther*, 390 Mich 436, 443, 212 NW2d 922 (1973).

contact him. We conclude that defendant has failed to establish that counsel's representation fell below an objective standard of reasonableness. Defendant has failed to overcome the strong presumption that counsel reasonably investigated Coats-Brewer and failed to call him for a sound reason—such as that Coats-Brewer would have exercised his right not to incriminate himself.

## V. SENTENCING

Defendant contends that the trial court improperly scored offense variable (OV) 14 when it determined that defendant was a leader in the robbery. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A finding is clearly erroneous if, after reviewing the entire record, we are definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

The trial court should assess 10 points under OV 14 if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1). If three or more offenders are involved in a robbery, it can have multiple leaders. MCL 777.44(2)(b). Leading includes directing or conducting other participants in the offense. *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014). But a defendant's exclusive possession of a gun, standing alone, does not support an assessment under OV 14. *Id.*

We are not definitely and firmly convinced that the trial court made a mistake when it found that defendant was a leader during the robbery. As well as defendant's possession of the sole gun, Melton testified that defendant helped plan the robbery. Defendant asked for the money, Melton and defendant were the two people who accompanied Richardson in the manager's office, and defendant carried the money away from the scene. We conclude that a preponderance of the evidence supported the trial court's determination that defendant was a leader in the robbery.

We affirm.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Jane M. Beckering