# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ADAM LOUIS BROWN,

Defendant-Appellant.

UNPUBLISHED
February 16, 2016

No. 324156
Kent Circuit Court
LC No. 14-001532-FH

Before: MURPHY, P.J., and WILDER and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right his conviction for assault with a dangerous weapon (felonious assault), MCL 750.82. A jury convicted defendant on June 4, 2014, and the trial court sentenced defendant to 18 to 48 months' imprisonment, with credit for 192 days served. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Defendant's conviction arises from a stabbing that occurred at a residence in Walker, Michigan on February 3, 2014. The record reflects that defendant lived at the residence with his girlfriend, Elisabeth Lawrence. Stacey Pifer and Jack Hekker were friends of Elisabeth. On the day of the offense, Jack and Stacey finished dinner at a restaurant at about 9:00 p.m. When they returned to Jack's truck, they discovered that Elisabeth had tried to call them several times. Stacey also discovered that Elisabeth sent her a Facebook message, requesting that Stacey pick her. According to Stacey, after reading the message, she called Elisabeth and asked her if she wanted Jack and Stacey to come pick her up. Elisabeth responded "yes." Before the conversation ended, Stacey heard Elisabeth yell "Adam, stop it," followed by Elisabeth "screaming bloody murder." The call then dropped. Stacey called Elisabeth back three or four times, but received no answer. She then told Jack to drive to Elisabeth's house.

Jack and Stacey arrived at Elisabeth's house. When Elisabeth did not answer phone calls or emerge outside, Stacey approached the front door and heard Elisabeth "start screaming at the top of her lungs." Specifically, she heard Elisabeth yell "help, Stacey, Jack, somebody help me." At that point, Stacey yelled for Jack to "come do something, she's screaming for help." Jack then kicked open the front door of the home and Stacey entered and went to the basement. After retrieving an ice scraper from his truck, Jack also went to the basement. Jack explained that he

-1-

grabbed the scraper because defendant carried knives. Jack did not realize the scraper had a metal edge.

When Jack and Stacey reached the basement, they observed defendant holding onto Elisabeth. As soon as defendant saw Jack and Stacey, he let Elisabeth go. Then, according to Jack, defendant immediately pulled a knife out and came after Jack. Jack testified that defendant tried to stab him "repeatedly" in the chest, but Jack held him back by using the ice scraper as a bar. In the midst of the struggle, however, defendant was able to stab Jack once in the left hand and once in the right shoulder.

Stacey testified that she did not actually see the stabbing because her attention was directed at Elisabeth. The only thing Stacey recalled was seeing defendant with a knife in his hand; he had his back turned to Stacey and he had Jack "backed into a corner." At one point, however, Stacey saw defendant "lunge" at Jack and then she saw "blood everywhere." Stacey did not see Jack hit defendant.

Immediately after the stabbing occurred, defendant ran back upstairs. Jack and Stacey ran out of the house through a basement door and called 911. Police officers found defendant holding a knife when they arrived and he had injuries including lacerations to his face. Defendant told a police officer that Jack struck him with the ice scraper.

Defendant was charged with felonious assault. At trial, defendant argued that he acted in self-defense when Jack attacked him with the ice scraper. Defendant's claim was supported by Elisabeth's testimony. In her testimony, Elisabeth acknowledged that she and defendant argued on the night of February 3, 2014. In the midst of that argument, Elisabeth expressed a desire to leave, but defendant did not want her to, so he took Elisabeth's car keys. In response, Elisabeth called Stacey to ask if she and Jack would come pick her up. She also sent Stacey a Facebook message. At some point thereafter, defendant took Elisabeth's cellular telephone, so Elisabeth grabbed her computer and went to an upstairs bedroom to give defendant space and to wait for Stacey's reply. While waiting, defendant came into the bedroom and the two began arguing again. It was around this time, in Elisabeth's recollection, that Jack and Stacey arrived at the house. Elisabeth left the bedroom and tried to leave out the front door, but defendant followed her and blocked her. Elisabeth then went to the basement in an attempt to leave out the basement door, but again defendant followed her and blocked her path. It was at this point that Elisabeth heard a "crash" from upstairs and then saw Jack and Stacey entering the basement.

According to Elisabeth, when Jack and Stacey entered the basement, she and defendant were standing next to each other. Then, according to Elisabeth, Jack began hitting defendant in the head with his fist. Elisabeth recalled seeing Jack hit defendant "at least once, maybe twice." Elisabeth also recalled seeing light reflect off a "metal object" of some sort [presumably, the ice scraper] that Jack was swinging in the air in defendant's direction. Elisabeth acknowledged that defendant stabbed Jack during the struggle. She claimed, however, that she did not actually see defendant pull a knife or stab Jack because she had already turned to leave the house. When she looked back, she heard Jack and Stacey scream and then she saw "all the blood."

Elisabeth acknowledged that her argument with defendant that night was "heated" and that there was a lot of yelling. She also acknowledged that defendant kept her in the house

against her will by blocking the doors. However, as noted above, she claimed that the dispute never turned physically violent. Elisabeth could not recall ever screaming or yelling for help. She claimed that Jack was the initial aggressor and that defendant was acting in self-defense.

After approving the trial court's jury instructions, defendant was convicted and sentenced as set forth above. Thereafter, he moved the trial court for a new trial. Defendant argued, in part, that the prosecutor committed reversible error when he argued to negate defendant's claim of self-defense. Specifically, the prosecutor argued that defendant was engaged in the commission of a crime (specifically, unlawful imprisonment) at the time the stabbing occurred. Therefore, the prosecutor argued, defendant was not acting in self-defense. However, defendant was not charged with unlawful imprisonment and the jury was not instructed on the elements of that crime. As a result, the jurors were "left to determine the elements of Unlawful Imprisonment on their own." This, according to defendant, resulted in an unfair conviction.

After a hearing on the matter, the trial court denied defendant's motion, reasoning simply that there was not "any basis for a new trial" and that "the appellate courts [could] deal with [the matter]." This appeal ensued.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred in failing to, *sua sponte*, instruct the jury as to the elements of unlawful imprisonment and domestic assault—crimes that the prosecutor argued negated defendant's claim of self-defense. Defendant also argues that the trial court erred in denying his motion for a new trial and that trial counsel was ineffective for failing to request the instruction.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination [if any] that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). Similarly, we review a trial court's decision whether to grant or deny a motion for a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id*. at 559. "Underlying questions of law are reviewed de novo . . . while a trial court's factual findings are reviewed for clear error." *Id*. (citations omitted).

As noted, defendant's theory at trial was that he stabbed Jack in self-defense after Jack attacked him. Defendant's theory was supported by Elisabeth, who testified that Jack was the initial aggressor. As such, both before and after the evidence was presented, the trial court instructed the jury on the defense of self-defense as follows:

> Self-defense. The defendant claims he acted in lawful self-defense. A person has the right to use force to defend himself under certain circumstances. If a person acts in lawful self-defense, his actions are justified and he is not guilty of assault with a dangerous weapon. You should consider all of the evidence and use the following rules to judge whether the defendant acted in lawful self-defense. Remember to judge the defendant's conduct according to how the circumstances appeared to him at the time he acted.

-3-

First, at the time he acted, the defendant must not have been engaged in the commission of a crime.

Second, that when he acted, the defendant must have honestly and reasonably believed that he had to use force to protect himself from the immanent unlawful use of force by another. If his belief was honest and reasonable, he could act at once to defend himself, even if it turns out later that he was wrong about how much danger he was in.

Third, that – a person is only justified in using the degree of force that seems necessary at the time to protect himself from danger. The defendant must have used the kind of force that was appropriate to the attack made and circumstances as he saw them. When you decide whether the force used was what seemed necessary, you should consider whether the defendant knew about any other ways of protecting himself affected [sic] the choice the defendant made.

Fourth, the right to defend oneself only lasts as long as it seems necessary for the purpose of protection.

Fifth, the person claiming self-defense must not have acted wrongfully and brought on the assault. However, if the defendant only used words, that does not prevent him from claiming self-defense if he was attacked.

The defendant does not have to prove that he acted in self-defense. Instead, the prosecutor must prove beyond a reasonable doubt that the defendant did not act in self-defense.

During its closing argument, the prosecutor referenced the impending self-defense instruction and noted that if any of the exceptions applied, defendant's claim of self-defense went "out the window." The prosecutor then asserted: "I can't focus on anything beyond number one, and that is at the time the defendant must not have been engaged in the commission of a crime. I cannot – I cannot think of a way around the fact that [defendant] was committing a crime against Elisabeth [sic] Lawrence at the time that this occurred." The prosecutor then argued that defendant had committed a crime when he prevented Elisabeth from leaving the house by taking her cellular telephone and keys from her and by blocking the doorways. In so doing, the prosecutor referenced the crime of assault.

Later in his closing argument, the prosecutor again argued that defendant was not entitled to claim self-defense because he "acted wrongfully and brought on the assault" by committing "domestic violence." Finally, in his rebuttal closing argument, the prosecutor again referenced the fact that defendant could not claim self-defense if he was engaged in the commission of a crime, and this time referenced the crime of unlawful imprisonment; i.e., that defendant would not allow Elisabeth to leave the home. After the prosecutor finished his closing argument, the trial court gave the final instructions, including the self-defense instruction set forth above.

On appeal, defendant does not take issue with the trial court's self-defense instruction, but rather argues that the trial court should have given additional instructions on the elements of domestic assault and unlawful imprisonment in order to give the jury guidance in resolving the

-4-

prosecutor's claims that defendant was not entitled to claim self-defense because he was engaged in the commission of a crime.

As a threshold matter, we note that defendant has waived his argument that the trial court erred in failing to *sua sponte* instruct the jury on the elements of domestic assault and unlawful imprisonment. Waiver is defined as "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (internal quotations and citation omitted). "It differs from forfeiture, which has been explained as the failure to make the timely assertion of a right." *Id*. (internal quotations and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (internal quotations and citation omitted). See also, *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011) (noting that, "by expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review."); *People v Burks*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 150857) (slip op at 1) (holding that this Court "did not need to reach" the issue of whether the trial court erred in failing to provide a jury instruction "because that instruction was never requested in the trial court.")

In this case, defendant did not request that the standard self-defense jury instruction be altered. Instead, defendant—through his trial counsel—affirmatively expressed satisfaction with the instructions given by the trial court—including the self-defense instruction—without requesting any additional instructions. By doing so, defendant waived the issue for appellate review and we need not address defendant's argument on appeal. *Carter*, 462 Mich 215; *Kowalski*, 489 Mich at 504; *Burks*, ___ Mich at ___.

Moreover, even if we were to address defendant's argument as an unpreserved error, defendant cannot show that the trial court's self-defense instruction amounted to plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her." *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013) (internal quotations and citation omitted). Jury instructions are reviewed as a whole to determine if they sufficiently protected a defendant's rights. *People v Huffman*, 266 Mich App 354, 371; 702 NW2d 621 (2005). Even if jury instructions are imperfect, reversal is not warranted if the instructions, as a whole, fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003).

Self-defense is an affirmative defense that legally "justifies otherwise punishable criminal conduct"—here, e.g., a felonious assault—if, at the time the defendant engaged in the conduct, he honestly and reasonably believed that his life was in imminent danger and that the conduct was warranted to prevent harm to himself. *Guajardo*, 300 Mich App at 35; *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010).

The Self-Defense Act (SDA), MCL 780.971 *et seq*., effective October 1, 2006, codified the common law rule of self-defense, *Dupree*, 486 Mich at 708, and provides, in relevant part:

-5-

(1) *An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force* may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1) (emphasis added).]

In this case, the self-defense instruction, fairly presented the issues to be tried and sufficiently protected defendant's rights. *Milton*, 257 Mich App at 475. Here, the instructions provided all of the elements contained in the SDA, MCL 780.972, and defendant has failed to cite any authority to support the proposition that something more was required. Furthermore, instructing the jury on domestic assault and unlawful imprisonment would have caused undue confusion by creating a trial within a trial, which would have potentially damaged the defense. Moreover, self-defense under the SDA is warranted when a defendant has an honest and reasonable belief that the use of deadly force is necessary to prevent death or great bodily harm. MCL 780.972(1)(a). Whether a defendant was "engaged in the commission of a crime" is related to the reasonableness inquiry that is the cornerstone of self-defense.

Further, even if we were to assume that the trial court should have provided the instruction, defendant cannot show that the error affected his substantial rights in that it impacted the outcome of the trial. *Carines*, 460 Mich at 763. Indeed, our Supreme Court has previously held that the failure to instruct on an element of an offense amounted to harmless error. See e.g. *Carines*, 460 Mich at 774; *Kowalski*, 4489 Mich at 505-507. In contrast, in this case, the allegedly deficient instruction did not concern elements of the charged offense, but rather concerned a portion of the self-defense instruction that could have vitiated defendant's right to present a claim of defense. Even if the court had provided the additional instructions, the evidence supported that defendant was engaged in the commission of a crime—domestic assault—when he used deadly force against Jack. According to Jack and Stacey, defendant's actions against Elisabeth precipitated their entry into the home, whereupon the fight between defendant and Jack occurred that ultimately resulted in defendant stabbing Jack. Thus, had the jury been instructed as to additional offenses to disprove self-defense, its verdict likely would have been the same. *Carines*, 460 Mich at 463-464.

Given our resolution of this issue, the trial court did not abuse it discretion in denying defendant's motion for a new trial. See MCL 769.26. Similarly, defendant cannot show that trial counsel's failure to request the additional instruction amounted to the ineffective assistance of counsel. First, counsel was not required to advance a novel, futile, or meritless position. *People v Reed*, 453 Mich 685, 695; 556 NW2d 858 (1996). Second, even assuming arguendo that counsel acted deficiently on an objective basis, defendant cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Pickens*, 446 Mich 298, 314; 521 NW2d 797 (1994).

## III. SUFFICIENCY OF THE EVIDENCE

Finally, defendant argues there was insufficient evidence to support his conviction of felonious assault.

We review a challenge to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). The test for resolving such a challenge is "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* at 400 (quotations and citation omitted).

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999); *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). A "battery" is "an intentional, unconsented and harmful or offensive touching of the person of another[,]" while an "assault" is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011).

Here, there was ample evidence that would have allowed a rational jury to conclude beyond a reasonable doubt that defendant committed an assault with a dangerous weapon. As defendant's trial counsel conceded in both his opening statement and closing argument, there is no dispute that defendant stabbed Jack. Jack indicated as much during his testimony. Moreover, while Stacey indicated that she did not actually see defendant stab Jack, she saw defendant with the knife in his hand immediately before the stabbing occurred and she saw defendant "lunge" toward Jack, and then saw blood. Thus, there was clearly an assault. Moreover, the knife used in the assault is expressly defined in MCL 750.82(1) as a dangerous weapon.

Finally, there was sufficient evidence to support that defendant stabbed Jack with the intent to injure him. Minimal circumstantial evidence is necessary to prove a defendant's intent. *Ericksen*, 288 Mich App at 196-197. A defendant's intent to injure can be inferred from facts like the nature, extent, and location of the injuries inflicted. *Id.* at 196. A defendant's intent to injure can also be inferred from the use of a dangerous weapon. *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Here, Jack testified that defendant pulled the knife out as soon as he saw Jack and Stacey enter the basement. Jack further testified that defendant came after him with the knife. In the midst of the ensuing struggle, defendant tried to stab Jack "repeatedly" in the chest before ultimately stabbing him once in the hand and once in the shoulder. Jack's stab wounds required emergency medical care, including stitches. From this evidence, a reasonable jury could have inferred that defendant intended to injure Jack.

Moreover, this same evidence supported beyond a reasonable doubt that defendant did not act in self-defense. *Dupree*, 486 Mich at 709-710. The jury heard testimony from Jack that defendant pulled a knife out as soon as he saw Jack and then came at him with the knife. Jack's testimony was corroborated by Stacey, who did not see the actual stabbing, but recalled seeing Jack backed into a corner by defendant, who had the knife in his hand, and then seeing defendant "lunge" at Jack. From this evidence, a rational jury could have found beyond a reasonable doubt

that defendant was the initial aggressor and he did not honestly and reasonably fear for his life when he stabbed Jack. MCL 780.972(1).

In sum, there was sufficient evidence to negate defendant's claim of self-defense and prove, beyond a reasonable doubt, that he committed felonious assault.

Affirmed.

/s/ William B. Murphy
/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello