# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLAS DAVID BURNETT,

      Plaintiff-Appellee,

v

TRACY LYNN AHOLA and DEREK AHOLA,

      Defendants-Appellants.

UNPUBLISHED
August 30, 2018

No. 338618
Genesee Circuit Court
LC No. 14-312262-DP

## ON REMAND

Before: METER, P.J., and BORRELLO and RIORDAN, JJ.

PER CURIAM.

This matter is before this Court pursuant to our Supreme Court's order of April 26, 2018, where, in lieu of granting leave to appeal, our Supreme Court vacated "parts B.II. and B.III." of this Court's prior ruling in *Burnett v Ahola*, unpublished per curiam opinion of the Court of Appeals, issued December 7, 2017 (Docket No. 338618), vacated in part 501 Mich 1055 (2018), and remanded the matter, directing:

> [O]n remand, while retaining jurisdiction, the Court of Appeals shall remand this case to the Genesee Circuit Court for further consideration. The trial court shall: (1) determine whether the defendants should be estopped from arguing that the plaintiff committed intrinsic fraud or fraud on the court during the proceedings under the Revocation of Paternity Act (ROPA), MCL 722.1431 *et seq*., given the entry into or failure to object to custody and parenting time orders with knowledge that the ROPA judgment was obtained through intrinsic fraud or fraud on the court; (2) conduct an evidentiary hearing to determine whether the plaintiff committed intrinsic fraud or fraud on the court during the ROPA proceedings; and (3) if so, determine to what, if any, remedy the defendants are entitled. [*Burnett v Ahola*, 501 Mich 1055; 909 NW2d 827 (2018).]

Upon conclusion of an evidentiary hearing by the trial court, the record was to be forwarded to this Court "to then rule on these issues." *Id*. All proceedings following remand by the Supreme Court were to be expedited. *Id*.

## I. BACKGROUND.

-1-

The most recent appeal in this matter arose from the trial court's May 15, 2017 order dismissing defendants' motion for relief from the November 3, 2015 order of filiation, which established plaintiff as the legal and biological father of JDA. The trial court had also granted summary disposition in favor of plaintiff. After initially addressing a jurisdictional challenge by plaintiff, this Court turned to defendants' contention that the trial court erred in granting plaintiff's motion for summary disposition and dismissing their motion for relief from judgment. Finding the trial court erred in granting plaintiff's motion for summary disposition, this Court explained:

> [T]he motion for relief from judgment was not a claim, but rather a motion requesting relief from a judgment. Instead of simply responding to the merits of the motion, plaintiff filed a motion for summary disposition. Consequently, it was technically improper for the trial court to consider plaintiff's motion for summary disposition of defendants' motion. [*Burnett*, unpub op at 4.]

This procedural error did not require reversal, however, because this Court determined that "the trial court did not err in denying defendants' motion for relief on judgment." *Id.*

This Court disagreed with defendants' argument that the trial court had abused its discretion in dismissing their motion for relief from judgment "by finding that they had waived their argument." *Id.* Rejecting defendants' contention of error, this Court explained:

> Initially, we reject defendants' arguments that the trial court erred in not accepting copies of the transcripts of the recordings as evidence and in refusing to hold an evidentiary hearing on the issues of plaintiff's alleged fraud and defendants' waiver. Contrary to this argument, a highlighted copy of the transcripts of the recordings was included in the lower court file. Furthermore, irrespective of whether additional transcripts were filed, the trial court was aware of the nature of the alleged fraud, and defendants' argument that the trial court was required to hold an evidentiary hearing is without merit. Although defendants are correct that "[w]aiver is a matter of fact to be shown by evidence[,]" the trial court did not err in determining the issue without holding an evidentiary hearing when the material facts were not disputed.

> Here, the relevant facts in the instant case, as discussed, were that defendants knew of the alleged fraud in June 2016, agreed to expand plaintiff's parenting time in July 2016, consented to plaintiff having shared legal and physical custody and equal parenting time in September 2016, and only then moving for relief from judgment based on plaintiff's alleged fraud in late October 2016. None of those facts were in any way disputed. Instead, the dispute between the parties was on the legal effect of those facts. Consequently, the trial court did not abuse its discretion when it determined that there were no contested facts that required an evidentiary hearing. [*Id.* at 5 (citation omitted; alterations in original).]

This Court also determined that "the trial court did not err in concluding that defendants waived the fraud issue," explaining:

At the ROPA hearing, the trial court heard testimony from various parties, including from plaintiff, where plaintiff testified that he believed Tracy to be divorced at the time of conception. Defendants appealed that decision to this Court and this Court affirmed on May 26, 2016. Throughout the month of June 2016, Tracy recorded plaintiff making statements that, if true, would establish that plaintiff committed perjury during the bench trial and obtained perjured testimony from others as well. It is undisputed that defendants knew of those recordings in June 2016. At that time, defendants could have immediately raised the fraud issue or moved for relief from judgment pursuant to MCR 2.612(C)(1)(c), or they could have moved this Court to reconsider its decision in light of the alleged newly discovered evidence pursuant to MCR 7.215(I).

Instead of pursuing relief or raising the fraud issue, defendants twice stipulated to, or did not raise a fraud objection to orders allowing plaintiff to take a more active and expanded role in JDA's life. Indeed, on July 6, 2016, the court entered a stipulated parenting time order allowing plaintiff to have three, nine-hour visits for the first week of July, and two, nine-hour visits during the second week of July and the entire second weekend of July, from Friday at 11:00 a.m. to Sunday at 8:00 p.m. While still in possession of the recordings, defendants proceeded to submit to mediation regarding custody and parenting time issues. Then, on September 30, 2016, the trial court entered a stipulated custody and parenting time order, which provided plaintiff with shared legal and physical custody of JDA. The order also provided that plaintiff would have overnight parenting time sessions with JDA for five nights every two weeks from the time of the order to January 1, 2017. From that date to July 1, 2017, plaintiff would get six overnight visits every two weeks. After July 1, 2017, plaintiff's time with JDA would be equal to defendants' time. When these orders were entered, defendants did not object or preserve the issue of fraud.

Nearly one month after the entry of that order, and more than four months after discovering plaintiff's alleged perjury, on October 24, 2016, defendants moved for relief from the ROPA judgment pursuant to MCR 2.612(C)(1)(c). Defendants motion was timely pursuant to MCR 2.612(C)(2) because it was filed within one year of the judgment from which they sought relief. However, plaintiff argued, and the trial court agreed, that defendants had waived the issue by their actions after discovering the alleged perjury and before moving for relief from judgment.

The trial court did not err in concluding that the consent judgment amounted to a waiver of the perjury issue. Here, Tracy's signing of the agreement and Derek's failure to object to the agreement to share legal and physical custody with equal parenting time was conduct that inferred defendants' intent to waive their challenge to the ROPA order based on plaintiff's alleged perjury. The outcome of the ROPA trial was to establish plaintiff as the biological and legal father of JDA. Subsequently, plaintiff's parental rights established by the ROPA order led to plaintiff seeking custody and parenting time. Defendants were aware that, without that ROPA order, plaintiff did not have any right to custody or

parenting time with JDA. Indeed, defendants appealed the ROPA order to this Court by arguing, amongst other things, that the trial court erred in determining that plaintiff did not know or have reason to know that Tracy was married at the time of conception. Stated differently, defendants were well aware that, if there was proof that plaintiff did actually know that Tracy was married at the time of conception, then plaintiff's ROPA claim would have failed.

Throughout the month of June, defendants accumulated evidence that they believed would ultimately lead to the reversal of the ROPA order and remove any parental rights held by plaintiff. Despite being in control of that information, defendants consented to increased parenting time for plaintiff in July 2016, and then agreed, or did not object to shared legal and physical custody with equal parenting time in September 2016. Defendants "acts and declarations manifest[ed] an intent and purpose not to claim the[ir] supposed advantage[.]" Indeed, in settling the issue of custody and expanding plaintiff's role in JDA's life, defendants' actions showed that they were prepared to move on from the issue of paternity and begin working toward a coparenting relationship. The consent custody order and consent parenting time order did not contain any indication that defendants wanted to preserve a claim of fraud for the future, nor did it make any mention that they still intended to assert that plaintiff was not JDA's legal father. And, although Derek never signed the order, he did not raise an objection or make any effort to preserve the issue at the time the order was entered. Instead, defendants conduct was "decisive, unequivocal conduct reasonably inferring the intent to waive" the issue of perjury. [*Id.* at 5-7 (citations omitted; alterations in original).]

This Court also rejected defendants' contention of error premised on the trial court's denial of their motion for reconsideration, stating:

While Derek did not sign the consent custody order, at the time the order was entered, defendants were in possession of information regarding the alleged fraud and Derek did not raise that issue or raise any objection to preserve the fraud issue. Accordingly, the trial court did not err in finding that both defendants waived the issue of fraud and the trial court did not abuse its discretion in denying the motion for reconsideration. [*Id.* at p 7.]

As previously, indicated, defendants filed an application for leave to appeal this Court's ruling in Docket No. 338618 to the Michigan Supreme Court on January 16, 2018. As noted, in lieu of granting leave to appeal, our Supreme Court vacated portions of this Court's ruling and remanded the matter "for further consideration." *Burnett*, 501 Mich at 1055. Tracy Ahola filed a motion for reconsideration which was denied by our Supreme Court. *Burnett*, ___ Mich ___; 911 NW2d 460 (2018).

II. REMAND

On May 1, 2018, this Court entered an order remanding the matter to the Genesee Circuit Court, in conformance with the order from our Supreme Court.[1] After remand by this Court, the trial court held three hearings. At the first hearing on May 7, 2018, the trial court adjourned the matter for one week, to consider this Court's instructions on remand regarding whether the trial court was being "asked to make a decision regarding estoppel or . . . to conduct a hearing." In the interim, plaintiff's parenting time was to continue. On May 14, 2018, the trial court set an evidentiary hearing date for May 24, 2018, and directed counsel for the parties as follows:

> [T]he Court is directing the moving party . . ., who represent the . . . Defendants . . . to specifically direct whatever allegations there are of specific intrinsic fraud or fraud on the court are to be specified in a written form; that information is to be submitted to the Court prior to the hearing date of May 24th.

The trial court declined to order additional discovery and, instead, indicated it would "make a determination with respect to the alleged intrinsic fraud and the alleged fraud on the Court. The moving party must specify what you are alleging was intrinsic fraud and you must specify what you believe is fraud on the Court." The trial court clarified that the required written submission by defendants was to encompass specific allegations of what defendants believed comprised "the specific circumstances, specific allegations of intrinsic fraud and the specific allegations that you believe were a fraud on the Court." Regarding further proceedings, the trial court indicated that at the next hearing date, the trial court is "going to be conducting a hearing with respect to phase number one of what the Court has directed." The trial court explained its understanding of the remand order as requiring it

> to determine whether the Defendant [sic] should be estopped from arguing that the Plaintiff committed intrinsic fraud or fraud on the Court; and then, number two, conduct an evidentiary hearing to determine whether the Plaintiff committed intrinsic fraud or fraud on the Court. The Court has latitude with respect to what is considered an evidentiary hearing. . . . I am satisfied that what the . . . Supreme Court is looking for is further specification from the Court as to the intrinsic fraud alleged, the fraud on the Court as alleged; and then, if this Court makes a determination that some further discovery, further evidence, further testimony is needed beyond the evidence that's already been submitted, you may want to make sure you're focusing on the evidence that's already been submitted to the Court at the lengthy trial that was conducted if you want to reference – or when you are referencing what you believe the intrinsic fraud and – or the intrinsic and fraud on the Court are. You need to make sure you're specifying that.

At the May 24, 2018 hearing, the trial court explained how it would proceed, focusing initially on "whether Defendant [sic] should be estopped from arguing that the Plaintiff committed intrinsic fraud or fraud on the Court during the proceeding under the Revocation of Paternity Act, given the entry into or failure to object to custody and parenting time orders with

---

[1] *Burnett v Ahola*, unpublished order of the Court of Appeals, entered May 1, 2018 (Docket No. 338618).

knowledge of the <u>ROPA</u> judgment – or that knowledge that the <u>ROPA</u> judgment was obtained through intrinsic fraud or fraud on the Court and then, number two, conduct an evidentiary hearing to determine whether the Plaintiff committed intrinsic fraud or fraud on the Court during the <u>ROPA</u> proceedings." Going forward, the trial court indicated it would use the previous trial court record, but emphasized it would not (a) "retry[]" the case, (b) reopen discovery, or (c) admit typewritten transcripts of recorded conversations. Instead, the trial court indicated it was trying to ascertain which, if any, of the allegations of fraud were "discoverable during the trial or prior to any agreement." Specifically, the trial court identified claims by defendants regarding "an imposter witness" and when the existence of this individual was known. In response, Tracy Ahola's counsel asserted that "everything that . . . Plaintiff . . . put forth was a fraud on the Court."

Without conducting any additional hearings, on June 13, 2018, the trial court issued an opinion. Following a brief recitation of the factual and procedural history of the case, the trial court recalled precluding defendants from admitting into evidence transcripts of conversations recorded by defendants without plaintiff's knowledge, reaffirming:

> The basis for this Court's ruling was that at the time of the ROPA trial the Court had already considered allegations of fraud, perjury, and issues such as whether the Defendant Tracy Ahola was present during home showings that involved the Plaintiff and Defendant Tracy Ahola.

The trial court found that defendants' reference to an "imposter witness," while not called such during the trial, was already addressed in the earlier proceedings. The trial court discussed the testimony and questioning of the realtor, Ryan Eashoo, which the trial court construed as "challenging whether this witness could identify Defendant Tracy Ahola or if it was a different female was present with the Plaintiff." The trial court affirmed it found Eashoo to be credible and that it was not "convinced that someone else had appeared at those real estate showings as an imposter." The trial court also revisited the testimony of the child's maternal grandmother, Pamela Baine, who asserted that plaintiff had paid witnesses, including Eashoo, to commit perjury. The trial court found Blaine's testimony to be "critical in determining that the issues of fraud, perjury, and tampering with witnesses were all topics known to the Defendants and to the maternal grandmother at the time of the ROPA trial." The trial court concluded:

> Therefore, this Court's evidentiary hearing just conducted resulting in Defendants' new counsel referencing ROPA trial evidence bears out that the topics of fraud, perjury, and imposter witness allegations were all known to this Court. The weight and credibility of these allegations was not found in the original trial to be in the Defendants' nor their witnesses' favor. Clearly each topic of fraud now alleged was known or should have been known to the Defendants and their original trial counsel. The fact that Defendants have now engage [sic] new counsel, post-trial and after two appeals, is not a basis to re-open proofs, provide further discovery, or to retry the original ROPA issue.

The trial court proceeded to explore the issue of estoppel, finding collateral estoppel, but not judicial estoppel, to be in applicable. The trial court determined defendants were "estopped from arguing that Plaintiff committed intrinsic fraud or fraud on the court during the ROPA

proceedings." Specifically, Tracy Ahola's waiver was "implied through her consent to post-judgment custody and parenting time orders, given her failure to object to custody and parenting time orders with the knowledge that the ROPA judgment was allegedly obtained through intrinsic fraud or fraud on the court." Despite the lack of availability of a claim of implied waiver for Derek Ahola, the trial court still found him to be "collaterally estopped from challenging the judgment" based on fraud, "because of his failure to object to custody and parenting time orders with the knowledge that the ROPA judgment was allegedly obtained through intrinsic fraud or fraud on the court." The trial court "admonished" defendants' current attorneys "to review the significant procedural history . . . as this Court is concerned with the timeliness of their allegations."

Next, the trial court explained that the evidentiary hearing it conducted on remand only encompassed what "it deemed necessary to get the merits of the fraud alleged." It was noted that the allegations or materials submitted to the trial court did not vary in type or significance from the evidence submitted in the original trial. The trial court opined that "all of the additional evidence offered was either (1) irrelevant to the outcome of the case, (2) in reference to a topic previously discussed and litigated throughout the trial, or (3) could have easily been discovered with due diligence during the original trial." With reference to claims of fraud premised on perjury, the trial court noted having already "considered the weight and credibility of such testimony in determining its final judgment[.]" Consequently, finding it "clear that there has been no evidence presented that could not have been discovered by either defendant with due diligence prior to or throughout the trial, the Court is satisfied with the adversarial trial conducted and with the weight and credibility it considered in determining the final judgment in this matter."

Addressing defendants' claims of "certain fraudulent documents," the trial court indicated it was "not persuaded by such claims given the weight of the evidence received. Furthermore, they are not relevant enough to this Court to alter the outcome of the judgment were the documents found to be fraudulent." Thus, based on its determination of a lack of evidence on the issue of fraud, the trial court found "that Defendants are even estopped from arguing such," and, therefore, "no available remedies" existed or were necessary.

III. ANALYSIS AND CONCLUSIONS

Following the trial court's opinion, defendants filed an appeal of right and additionally filed a motion with this Court seeking to file additional briefs to address what defendant's characterized as the trial court's failure to adhere to the Supreme Court's directive and conduct an evidentiary hearing, which this Court denied. It is recognized that "[a] trial court must 'comply strictly' with our Supreme Court's mandate." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 548; 705 NW2d 365 (2005). (Citation omitted). As indicated by the expedited nature of this review, finality and expediency are particularly important because the issue centers on the ultimate determination of custody and availability of parenting time for a child. This litigation was initiated in 2014, after the child's birth, and has continued for four years, during which time the child has become familiar and formed a relationship with plaintiff. Additional delays in resolving this matter threaten, or at the very least impede, the minor child's continuity with the adults currently in his life and his well-being. Therefore, as to the issue of whether the trial court strictly complied with our Supreme Court's

order, it seems to us that rather than prolong this litigation further by granting another remand to the trial court, because it is possible to resolve defendant's claims based on the record before us, that would be the more appropriate course of action so as to minimize any disruption and ambiguity for the minor child.

Examination of the remand order from our Supreme Court necessitates that this Court revisit the issue of waiver, under the guise of estoppel. Specifically, our Supreme Court directed the trial court to determine if defendants are *estopped* from arguing plaintiff engaged in fraud during the ROPA proceedings premised on their entry into or failure to object to various custody and parenting orders despite their "knowledge that the ROPA judgment was obtained through . . . fraud[.]" *Burnett*, 501 Mich at 1055. While the Supreme Court did not "express [an] opinion on the lower courts' waiver analysis," it did vacate the portion of this Court's opinion affirming the trial court's determination that defendants had waived the issue of fraud. *Id*. Initially, the trial court determined that defendants signed various parenting time and custody orders in July and September of 2016, despite having knowledge or evidence of plaintiff's alleged fraud in June of 2016, resulting in a waiver of the fraud issue. On remand, the trial court analyzed these same factors and circumstances and concluded that defendants were collaterally estopped from raising the issue of fraud.

In order to determine whether defendants are estopped from arguing plaintiff engaged in fraud, and in keeping with our Supreme Court's mandate, we deem that the focus of this case and resultant analysis should be procedural in nature and on the proper characterization of defendants' fraud claims. Clarification of the procedural requirements and terminology must first be undertaken to permit a meaningful discussion because defendants' claims of fraud tend to blur the distinction between their alleged entitlement to relief for fraud from their accusations of fraud premised on newly discovered evidence.

Defendants filed a motion seeking relief from judgment pursuant to MCR 2.612(C)(1)(c), and fraud on the trial court under MCR 2.612(C)(3), which are distinguishable. Specifically:

(C) Grounds for Relief From Judgment.

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

* * *

(c) Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

* * *

(3) This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding; to grant relief to a defendant not actually personally notified as provided in subrule (B); or to set aside a judgment for fraud on the court. [MCR 2.612.]

The distinction inherent within the two subsections of this court rule was discussed by this Court in *Stallworth v Hazel*, 167 Mich App 345, 355; 421 NW2d 685 (1988):

> MCR 2.612 allows two means of obtaining relief from a judgment procured by fraud. A party may obtain relief by motion in the case in which the adverse judgment was rendered, MCR 2.612(C)(1)(c), or the party may proceed by independent action, MCR 2.612(C)([3]). The standards for relief under the two sections of MCR 2.612 involve a distinction between extrinsic and intrinsic fraud. Extrinsic fraud is fraud which actually prevents the losing party from having an adversary trial on a significant issue. Perjury is merely intrinsic fraud; while it constitutes fraud in obtaining a judgment, it does not prevent an adversary trial. [Citations omitted.]

This Court observed, relying on *Rogoski v Muskegon*, 107 Mich App 730, 736; 309 NW2d 718 (1981), "that a party proceeding in an independent action is entitled to relief only from a judgment procured by extrinsic fraud." *Stallworth*, 167 Mich App at 355. It also recognized that "[t]his does not mean that a litigant is never entitled to relief from a judgment obtained by intrinsic fraud. However, this relief cannot be by independent action but, rather, must be by motion in the case in which the adverse judgment was rendered." *Id.* (citation omitted).

Defendants argued that the ROPA judgment should be set aside premised on plaintiff's perjury and fraud on the court, suggesting his solicitation of false testimony from other witnesses at the ROPA hearing. While not explicitly presented or characterized as such, defendants' argument is that recordings of telephone conversations between Tracy Ahola and plaintiff procured in June of 2016 and October of 2016, after the ROPA hearing, comprise newly discovered evidence serving to verify plaintiff's fraud.

This Court has previously determined:

Because [the] allegation of perjury is dependent upon newly discovered evidence, . . . such perjury should warrant relief from judgment only if it could not have been discovered and rebutted at trial by the exercise of due diligence. Any other result would undermine MCR 2.611(A)(1)(f), which allows a new trial based on newly discovered evidence only when that evidence "could not with reasonable diligence have been discovered and produced at trial." [Defendants] in this case seeks to obtain relief by alleging perjury based on newly discovered evidence without being subject to the restraints placed on such evidence under MCR 2.611. [*Stallworth*, 167 Mich App at 356.]

Notably, on remand, when instructed by the trial court to provide a detailed listing of all the instances of fraud alleged and to characterize the type of fraud, defendants produced identical listings of 74 items. Of these 74 items, numbers 1 through 70 pertain to testimony at the ROPA hearing or deposition testimony reviewed during the ROPA hearing, with the remaining four items encompassing written pleadings or documents filed with the trial court. A breakdown of the initial 70 items reveal that at least 34 of the incidents or statements identified are completely irrelevant to the issue of whether plaintiff was aware of Tracy Ahola's marital status at the time of conception.

Clearly, all of the incidents of fraud that have been alleged and relied on by defendants were discoverable at the time of the ROPA trial and comprised intrinsic fraud, which is defined as "a fraud within the cause of action itself." *Sprague v Buhagiar*, 213 Mich App 310, 314; 539 NW2d 587 (1995).[2] MCR 2.612(C)(1)(b) provides that a court may provide relief from a final judgment or order based on "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under MCR 2.611(B)." For a new trial to be granted on the basis of newly discovered evidence, the party requesting the new trial is required to demonstrate that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), (internal quotation marks and citation omitted).

Contrary to defendants' implication or characterization, plaintiff's alleged admissions after trial do not constitute newly discovered evidence. All of the incidents of alleged perjury or fraud were known to defendants at the time of the ROPA hearing as demonstrated by defendants' most recent submission identifying the specific incidents relied upon to support their fraud claims as directed by the trial court on remand. As such, plaintiff's alleged admissions regarding his lack of veracity comprise merely newly available evidence.

"The key to deciding whether evidence is 'newly discovered' or only 'newly available' is to ascertain when the defendant found out about the information at issue. A witness's shifting desire to testify truthfully does not make that witness's testimony 'newly discovered' evidence." *People v Terrell*, 289 Mich App 553, 564; 797 NW2d 684 (2010), (quotation marks and citation omitted). Newly available evidence is not synonymous with newly discovered evidence sufficient to warrant a new trial. *Id.* at 562. "[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao*, 491 Mich 271, 281; 815 NW2d 105 (2012). "Indeed, because '[o]ne does not "discover" evidence after trial that one was aware of prior to trial,' this is the only reasonable understanding of 'newly discovered evidence.' To hold otherwise stretches the meaning of the word 'discover' beyond its common understanding." *Id.* at 281-282 (citations omitted).

"Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action." *Leahy v Orion Twp*, 269 Mich App 527, 530; 711 NW2d 438 (2006). Collateral estoppel is applicable based on the trial court's determinations at the original ROPA hearing, wherein it specifically addressed the discrepancies in witness testimony, especially Tracy Ahola's testimony contradicting the assertions of various witnesses presented by plaintiff.

---

[2] In contrast, extrinsic fraud "is fraud that arises outside the facts of the case." *Sprague*, 213 Mich App at 313.

In its initial ruling determining paternity, the trial court ruled several times regarding the credibility of witnesses. For instance, the trial court stated, in relevant part:

> "Although Defendant Tracy Ahola testified that she never met Mr. Eashoo, this Court finds the testimony of a disinterested third party, Mr. Eashoo, more credible than Defendant Tracy Ahola's testimony as to this fact."

> "The Court received abundant testimony from multiple witnesses who stated that Defendant Tracy Ahola spoke to them about her pending Divorce during the summer of 2013, including Mr. Eashoo, a disinterested, third party, who testified that Defendant Tracy Ahola told Mr. Eashoo that she was recently divorced on September 27, 2013. These statements were rebutted only by testimony from Tracy Ahola and her mother Pamela Blaine; and the Court found their testimony to be less credible." [Opinion, filed November 3, 2015, p 4, lower court record volume I.]

As discussed in *Williams v Willliams*, 214 Mich App 391, 399; 542 NW2d 892 (1995):

> While recognizing that the level of proof relating to allegations of fraud is "of the highest order," we believe that the trial court itself is best equipped to decide whether the positions of the parties . . . mandate a judicial assessment of the demeanor of particular witnesses in order to assess credibility as part of the fact-finding process. Some motions undoubtedly will require such an assessment, e.g., situations in which "swearing contests" between two or more witnesses are involved, with no externally analyzable indicia of truth. Other motions will not, e.g., situations in which ascertainable material facts are alleged, such as the contents of a bank account on a particular day. Where the truth of fraud allegations can be determined without reference to demeanor, we do not believe that the law requires a trial court to devote its limited resources to an in-person hearing.

In this instance, the trial court has already considered the alleged fraudulent evidence, such as the testimony of plaintiff and various witnesses at the ROPA hearing, and made determinations regarding their credibility under the adversarial conditions of trial. This Court will typically defer to a factfinder's determinations regarding witness credibility. *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008). Although this matter comprises a rather unique confluence of legal procedures and concepts, at its most basic level it is comprised of defendants' claims of fraud premised on newly discovered evidence, i.e., recorded statements of plaintiff. As such, relief from judgment is only warranted if the alleged fraud "could not have been discovered and rebutted at trial by the exercise of due diligence." *Stallworth*, 167 Mich App at 356. Defendants' claims of fraud suggesting newly discovered evidence, in addition to only qualifying as newly available evidence, are a poorly disguised attempt to relitigate an issue already rejected by the trial court based on its credibility determinations.

As discussed, *supra*, defendants were aware of their possible claims of fraud during the ROPA hearing when testimony was elicited from witnesses that defendants assert was untruthful with Tracy Ahola, in particular, disputing the accuracy or veracity of the testimony elicited from

witnesses such as Eashoo and plaintiff. Defendants appealed the judgment to this Court, on the basis of plaintiff's standing, which affirmed the trial court's ruling. Between the original ROPA determination on November 3, 2015, and defendants' filing of a motion for relief from judgment on October 24, 2016, various parenting time and custody orders involving the minor child were effectuated. Within approximately one week of the one-year time limitation imposed by MCR 2.612(C)(2), defendants filed their motion for relief from judgment asserting plaintiff's fraud in securing the ROPA judgment, based on recordings obtained of conversations between Tracy Ahola and plaintiff, wherein it is alleged plaintiff admitted having engaged in perjury during the ROPA proceedings, which plaintiff disputes. During this extended time period, plaintiff has been engaging in increasing amounts of parenting time with the minor child and has been awarded joint custody of the minor child. Given this history, defendants are estopped from now seeking to redress plaintiff's alleged fraud based on their knowledge of the alleged fraud at the time of the ROPA proceeding and the implied waiver arising from the agreements reached in the interim on the issues of parenting time and custody. In addition, there is a long-standing, historical recognition regarding the method to deal with issues or claims of intrinsic fraud, which is particularly apropos in these circumstances:

> "The courts hold that perjury is intrinsic fraud and that therefore it is not ground for equitable relief against a judgment resulting from it. We have seen that the fraud which warrants equity in interfering with such a solemn thing as a judgment must be fraud in obtaining the judgment, and must be such as prevents the losing party from having an adversary trial of the issue. Perjury is a fraud in obtaining the judgment, but it does not prevent an adversary trial. The losing party is before the court and is well able to make his defense. His opponent does nothing to prevent it. This rule seems harsh, for often a party will lose valuable rights because of the perjury of his adversary. However, public policy seems to demand that there be an end to litigation. If perjury were accepted as a ground for relief, litigation might be endless; the same issues would have to be tried repeatedly. As stated in a leading case, 'the wrong, in such case, is of course a most grievous one, and no doubt the legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is, that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again *ad infinitum*.' And to use the language of an eminent court, 'the maxim that fraud vitiates every proceeding must be taken, like other general maxims, to apply to cases where proof of fraud is admissible. But where the same matter has been actually tried, or so in issue that it might have been tried, it is not again admissible; the party is estopped to set up such fraud, because the judgment is the highest evidence and cannot be contradicted.' " [*Daoud*, 455 Mich at 193-194, quoting *Columbia Casualty Co v Klettke*, 259 Mich 564, 565-566; 244 NW 164 (1932) (citation omitted).]

Affirmed.  Plaintiff having prevailed may assess costs.  MCR 7.219(A).


/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Michael J. Riordan