*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHANNON LEIGH-VERLIN DREW,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2022

No. 356053
Newaygo Circuit Court
LC No. 20-012356-FH

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant appeals her jury-trial convictions of assault with intent to do great bodily harm (AWIGBH), MCL 750.84, and domestic violence, MCL 750.81(2). The trial court sentenced defendant to serve concurrent terms of imprisonment of 15 months to 10 years for the AWIGBH conviction and 93 days for the domestic violence conviction. We affirm.

## I. BACKGROUND

Danny Thompson had been married to Jennifer Thompson for 20 years until their 2008 divorce. Defendant dated Danny from 2015 until "months before" the incident at issue. Danny and Jennifer remained on friendly terms, and Jennifer had socialized with defendant. On November 21, 2019, defendant and a friend, Scott Wass, had been with Jennifer during the day and ended up at Jennifer's home. Defendant was moving items from her truck into Jennifer's garage in order to make room for Jennifer to sit in the truck so they could go to dinner. When Wass and defendant were sitting in the truck, Danny was dropped off at Jennifer's home unannounced. The accounts of the witnesses diverge after Danny's arrival but include that defendant was physically aggressive with Danny soon after he arrived. According to Jennifer and Danny, while defendant and Danny were involved in a physical altercation, defendant retrieved an arrow from her truck and was "jabbing" at Danny. According to Danny, defendant struck him in the arm with a sharp-tipped arrow. Jennifer and Danny also testified that Wass and Danny engaged in a brief physical altercation. Jennifer had been demanding that the fighting stopp, and when it did, defendant and Wass drove away as Danny called the police. After trial and sentencing,

defendant filed a motion for a new trial, or resentencing, asserting the same errors that he raises on appeal. The trial court denied the motion.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision to deny a motion for a new trial for an abuse of discretion. *People v Terrell*, 289 Mich App 553, 558; 797 NW2d 684 (2010). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is warranted only if plain error resulted in the conviction of an innocent defendant, or if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence. *Id.* The constitutional question of whether an attorney provided ineffective assistance is reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008).

This Court reviews the trial court's factual determinations at sentencing for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

## III. PROSECUTORIAL ERROR

A trial court may grant a criminal defendant a new trial on any ground that would support reversal on appeal, or because it believes that the verdict resulted in a miscarriage of justice. MCR 6.431(B); *Terrell*, 289 Mich App at 559. Defendant argues that the trial court abused its discretion by denying her motion for a new trial insofar as it was based on prosecutorial error and defense counsel's failure to raise attendant objections.

## A. CLOSING ARGUMENT

Defendant argues that the prosecutor improperly suggested in closing argument that the jury consider defendant's reliance on her right to remain silent while determining her guilt.

The United States Constitution guarantees that no person "shall be compelled in any criminal case to be a witness against himself." US Const, Am V. See also Const 1963, art 1, § 17. A defendant's right to due process is violated when the prosecutor uses postarrest, post-*Miranda*[1] silence "for impeachment or as substantive evidence unless it is used to contradict the defendant's trial testimony that he made a statement, that he cooperated with police, or that trial was his first opportunity to explain his version of events." *People v Solmonson*, 261 Mich App 657, 664; 683 NW2d 761 (2004), citing *Doyle v Ohio,* 426 US 610, 619 n 11; 96 S Ct 2240; 49 L Ed 2d 91 (1976). A prosecutor generally may not comment on a defendant's silence or failure to present evidence because such comments tend to shift the burden of proof. *People v Davis*, 199 Mich App

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

502, 517; 503 NW2d 457 (1993), overruled in part on other grounds by *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012).

During the closing argument, the prosecutor discussed defendant's theory that she reasonably felt a need to preemptively strike Danny because she was afraid that Danny would harm her due to previous violence. The prosecutor remarked as follows:

> But when we come here today, or yesterday, we have the testimony of [defendant] out of nowhere, these four instances from November of last year to September of this year. This is the first time we're hearing of this. You have to put two and two together, ladies and gentlemen. The judge is going to instruct you, do people have a motive for telling the truth, a motive for telling a lie. You're going to have to calculate and figure that in.

Defendant argues that this comment impermissibly referenced defendant's reliance on her right to remain silent about previous times when Danny had been violent with her as a reason to disbelieve her claim that she had to strike him in order to defend herself. In rejecting this argument, the trial court held that the prosecutor's reference to defendant's prearrest, pre-*Miranda* silence about previous domestic violence against her was permissible because it would be natural to report such crimes, and defendant had waived her privilege against self-incrimination.

Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. In this case, the prosecutor summarized the facts of the case, concluding with defendant's interview with a police officer. Immediately before the comments about defendant not having previously reported that Danny had been violent with her, the prosecutor stated the following:

> Nowhere in her statement to Trooper Willea is there anything about any fear of Danny from prior occasions. Think about it. Use your commonsense, put yourself in that place. I'm sitting at a trooper's station being interviewed for having attacked somebody with an arrow with a broad-head on it. I was so traumatized by past events that I had to defend myself preemptively in order to protect myself, but I won't tell the trooper any of this. I don't say . . . hey, Trooper, it's not like that . . . at all. Let me tell you about what's going on, really, behind the scenes, and what I did and why I did it. There's nothing like that. Nothing, no mention of those instances. No mention of fear, no mention of any rational[e] for having to preemptively strike, nothing.

The context thus indicates that the challenged prosecutorial comments were related to the comment made immediately before that defendant did not say anything to the police about Danny's

alleged violence against her.[2]  Further, defendant testified that, although she revealed less than the entirety of past incidents of abuse by Danny when she was interviewed, she did mention some of them in support of her claim that she struck Danny out of fear that he would strike her.  According to Trooper Willea, however, defendant did not tell him that she felt in danger that Danny would harm her and gave no indication, other than that Danny had grabbed her arm, that she was in physical danger.

Attacking the veracity of a defense theory does not shift the burden of proof.  *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005).  "[A prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true."  *Id*. at 634-635.  Accordingly, the prosecutor was not improperly commenting on defendant's exercise of her post-*Miranda* warning right remain silent, as was the case in *Solmonson*, 261 Mich App at 664, but rather was permissibly commenting on testimony about her interview with Trooper Willea in light of her claim that she had to resort to physical force against Danny because she was afraid he would hurt her.

The prosecutor later commented again on defendant's not having disclosed Danny's alleged acts of violence before trial:

My suggestion to you, ladies and gentlemen, is all of the past instances as denied by [Danny] were concocted for the purpose of a defense here in this trial.  After our trial, there's nothing to bear it out.  Danny denies it outright, and there's no mention of it anywhere up until the point of trial.

With this statement, the prosecutor urged the jury to discredit defendant's testimony about Danny's previous physical altercations with her, partly because Danny contradicted those allegations and partly because defendant had not mentioned such instances until her trial testimony.

However, the time until trial extended beyond defendant's interview with Trooper Willea to include the period after defendant was informed at the arraignment of her right to remain silent.  We, therefore, note that, to that extent, the prosecutor's closing argument may have improperly touched upon defendant's exercise of her right to remain silent.  However, any error was not sufficiently prejudicial to warrant a new trial.  The contested statement was very brief, and because the evidence did not indicate that defendant was asked to speak after her arraignment and the matter about which she was silent was not self-incriminating, any implication that she did not mention Danny's previous violence during this period was of little potency.  The emphasis of the prosecutor's argument that defendant failed to identify these previous alleged acts was on the occasion when defendant was asked about Danny's actions during the police interview, which was a proper argument.  There was testimony from a witness to the altercation, as well as from Danny, that defendant stabbed at Danny with an arrow, and neither of these witnesses suggested that defendant did so out of a need to protect herself.  Any improper argument thus was not sufficient

---

[2] We note that there was no evidence or argument that defendant was under arrest or had been given her *Miranda* warning at the time of her interview with Trooper Willea.

to support reversal and retrial. See *People v Borgne*, 483 Mich 178, 197-198; 768 NW2d 290 (2009), and *Terrell*, 289 Mich App at 559.

Further, the trial court instructed the jury to decide the facts after considering only "the evidence that has been properly admitted in this case," and that "[t]he lawyers' statements and arguments are not evidence." Instructions from the trial court may be "sufficient to eliminate any prejudice that might have resulted from the prosecutor's remarks," *Thomas*, 260 Mich App at 454, because jurors are presumed to follow their instructions, and this instruction should have alleviated any prejudice resulting from any impropriety in the challenged prosecutorial statements. See *Unger*, 278 Mich App at 237.

## B. INEFFECTIVE ASSISTANCE

Defendant argues that defense counsel provided ineffective assistance by failing to object to the prosecutor's comments about her failure to report Danny's previous violence against her until trial. We reject this argument because the prosecutor's comment about defendant's lack of previous reporting was permissibly in reference to defendant's statement to the police. Such an objection would likely have been overruled, or, at best, the prosecutor might have had to clarify that this argument did not include the period after defendant's arraignment. Regardless, as discussed, any impermissible argument did not prejudice defendant because it was cured by the jury instructions.

## IV. HEARSAY

Defendant asserts that four hearsay statements attributed to Jennifer were errantly admitted through the testimony of Trooper Willea, who had interviewed her, and that defense counsel was ineffective for failing to raise attendant objections.

## A. WITNESS'S PRIOR INCONSISTENT STATEMENTS

Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted. MRE 801(c); *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Hearsay is not admissible unless it comes under an exception set forth in the rules of evidence. MRE 802; *Stamper*, 480 Mich at 3.

As noted, defendant makes issue of Trooper Willea's testimony (1) that Jennifer did not tell him that Danny had jumped on defendant, who had jumped on a pile of her own belongings, (2) that Jennifer told him that defendant had jabbed at Danny's ribs multiple times with an arrow, (3) that Jennifer told him that defendant started the fight by attacking Danny, and (4) that Jennifer did not tell him that Danny had punched defendant. The two statements concerning what Jennifer did *not* tell Willea were not hearsay statements because they were not a recounting of out-of-court assertions by Jennifer. That leaves two unsworn, out-of-court statements of Jennifer that were apparently offered to establish facts and contradict Jennifer's trial testimony. Therefore, the statements were inadmissible unless they came under an exclusion from the definition of "hearsay," or an exception to the general rule against admitting it.

Because defendant's trial counsel did not object to the statements, the trial court was not asked to determine whether the statements were admissible, and the prosecuting attorney had no need to rehabilitate the evidence. After the posttrial hearing, however, the trial court denied defendant's motion for a new trial on the ground that Trooper Willea's testimony about Jennifer's statements was offered as extrinsic impeachment of Jennifer's own testimony, and thus was not hearsay. We agree that the challenged testimony was admissible for that reason. See MRE 613.

Defendant acknowledges that Jennifer's statements to Trooper Willea contradicted Jennifer's trial testimony. Jennifer and Willea were prosecution witnesses, but the prosecution may impeach its own witnesses under certain conditions. See MRE 607 ("The credibility of a witness may be attacked by any party, including the party calling the witness."). In contrast to Willea's report, Jennifer testified that she witnessed defendant strike at Danny's body with an arrow an unknown number of times and that she did not know what part of the body defendant was striking. Also, Jennifer testified that defendant approached Danny while he was near Jennifer's porch, and they started yelling and then fighting, and stated that "I think [defendant]" gave the first "blow," before later stating that she did not see who initiated the fight because she was inside. The latter did not comport with Willea's testimony that Jennifer had told him that "[defendant] exited the vehicle after Danny was near the steps, walked up and started striking him." Thus, Trooper Willea's testimony about Jennifer's statement to him was used to impeach Jennifer's testimony.

Unsworn, out-of-court statements of a witness that are inconsistent with trial testimony "are admissible only for impeachment purposes and, since they would otherwise be hearsay, cannot be used as substantive evidence of the truth of the matter asserted." *People v Kohler*, 113 Mich App 594, 599; 318 NW2d 481 (1981). MRE 613 addresses the admission of extrinsic impeachment evidence:

> **(a) Examining Witness Concerning Prior Statement**. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request it shall be shown or disclosed to opposing counsel and the witness.

> **(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

As discussed, it was proper for impeachment purposes for plaintiff to elicit evidence of Jennifer's statements to Trooper Willea that were contrary to her testimony.

Defendant argues that the challenged statements were not admissible under MRE 613(b) because the prosecutor did not provide a proper foundation. However, "it is no longer necessary to follow the traditional foundational requirements[.]" *People v Parker*, 230 Mich App 677, 683; 584 NW2d 753 (1998). Under MRE 613(b), "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the

same and the opposite party is afforded an opportunity to interrogate the witness thereon." A proper foundation to admit a prior inconsistent statement includes "questioning the witness concerning the time and place of the statement and the person to whom it was allegedly made." *People v Rodriguez*, 251 Mich App 10, 34; 650 NW2d 96 (2002). Additionally, the witness must be provided the "opportunity to address the alleged inconsistency at some point during the trial," although there is "no particular sequence or timing so long as the witness has the opportunity to explain the statement." *Parker*, 230 Mich App at 683.

Because defense counsel did not object to the challenged testimony, the prosecutor and trial court were not called upon to state on the record how Jennifer had the opportunity to explain her prior inconsistent statement. However, Jennifer did have the opportunity to do so during her direct and cross-examination. She was asked about her statements to Trooper Willea, and was reminded that she had made contradictory statements to him.[3] When asked whether she informed the police of Danny's behavior of "flopping" on top of defendant, Jennifer answered, "I don't know," and denied that she had stated to the prosecutor that Danny tried to help her off of the pile. Jennifer stated that she could not remember telling the police that defendant was "hitting" Danny's side with the arrow, and when confronted about her not having previously mentioned that Danny had struck defendant, she agreed that she had not mentioned it. Jennifer additionally testified that she had told the prosecutor and Trooper Willea that there was going to be a discrepancy over her statement that Danny was going to punch Wass. This testimony demonstrates that Jennifer understood what occasion engendered the prior inconsistent statements and, although not necessarily in a traditional way, that she had the opportunity to respond to the parties' questions about them. Thus, the trial court did not plainly err by determining that Willea's testimony recounting Jennifer's statements was admissible as impeachment evidence, and did not abuse its discretion by denying defendant's motion for a new trial.

Further, even if Jennifer had an insufficient opportunity to explain her prior inconsistent statements, we are not persuaded that it is "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999). The admission of Jennifer's conflicting statements through Trooper Willea's testimony was not outcome determinative. Jennifer provided two somewhat different versions of events, and the jury was responsible for deciding which statements, or portions thereof, to believe.

## B. INEFFECTIVE ASSISTANCE

Defendant also argues that defense counsel provided ineffective assistance by failing to object to the extrinsic evidence of Jennifer's prior inconsistent statements. However, as the trial court determined, any objection would have been overruled because the challenged testimony was admissible. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120

---

[3] A prosecutor's question to a witness about what the witness told the prosecutor functions as a "refreshment," and is "in keeping with laying a proper foundation under MRE 613." *Rodriguez*, 251 Mich App at 34-35.

(2010). Alternatively, as previously concluded, any error in the admission of this testimony did not prejudice defendant.

## V. OFFENSE VARIABLES

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). The court must consult the advisory sentencing guidelines and assess the highest amount of possible points for all offense variables. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015).

"A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014), overruled in part on other grounds by *People v White*, 501 Mich 160, 164 n 2; 905 NW2d 228 (2017).

### A. OFFENSE VARIABLE 1

OV 1 concerns the aggravated use of a weapon and is assessed at 15 points when "the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). This variable is assessed at 10 points when "[t]he victim was touched by any other type of weapon." MCL 777.31(1)(d). To "threaten" means "to be a menace or source of danger to," or "to indicate impending evil, mischief, or difficulty." *People v Brooks*, 304 Mich App 318, 321; 848 NW2d 161 (2014) (quotation marks and citation omitted).

Defendant argues that OV 1 should have been scored at 10 instead of 15 points because there was insufficient evidence that the arrow that defendant used was a "cutting or stabbing weapon." However, Danny testified that, during the altercation, defendant brandished an arrow by raising it over her head and stating that "if she had a knife, she'd stab me to death." According to Danny, the arrow had a pointed tip and also flared out into three or four blades. He stated that defendant stabbed him in the arm with it, puncturing his arm and hitting a bone. Jennifer testified that she saw defendant thrusting an arrow at Danny multiple times over about 10 seconds. Danny testified that he later saw an arrow in the driveway that had a tip but no blades. Trooper Willea testified that an untipped arrow was found in Jennifer's driveway and that defendant asked him whether the arrow had a broadhead and stated that it could have fallen out of her arrow case. Medical testimony indicated that Danny ended up with a .25-centimeter cut on his arm. A preponderance of the evidence thus indicated that the arrow functioned as a "cutting or stabbing weapon" that defendant used to threaten Danny, and thus supported the assessment of OV 1 at 15 points.

### B. OFFENSE VARIABLE 2

OV 2 concerns the "lethal potential of the weapon possessed or used," and is scored at five points when a defendant used or possessed a "knife or other cutting or stabbing weapon." MCL 777.32(1)(d). Defendant argues that the evidence was insufficient to show that the arrow was a stabbing weapon, but as we concluded, a preponderance of the evidence supported the conclusion that defendant used a sharp arrow to stab at Danny. Therefore, the trial court did not err in assigning 5 points for OV 2.

## C. OFFENSE VARIABLE 19

Defendant argues that OV 19 was incorrectly assessed at 10 points because there was no evidence that she interfered with the administration of justice. In denying the motion for a new trial, the trial court did not address this issue. The prosecutor, in response to the motion, argued in part that the evidence of defendant slapping the phone out of Danny's hand after he indicated to defendant that he was calling a Deputy Sheriff warranted 15 points, or at least 10, under OV 19.[4] On appeal, the prosecutor focuses exclusively on this argument in support of affirming this scoring.

MCL 777.49(c) requires that the sentencing court assess 10 points for OV 19 if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." The factors considered for OV 19 include events that almost always occur after the charged offense has been completed. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). Interfering or attempting to interfere with the administration of justice includes acts that constitute obstruction of justice, but is not limited to such acts. *Ericksen*, 288 Mich App at 204.

We agree with the prosecution that the trial court likely could have properly assessed OV 19 at 15 points on the basis of defendant's having slapped Danny's phone out of his hand during the altercation, as testified to by Danny and Jennifer, and that her act supports the scoring of 10 points. Defendant's action delayed Danny from carrying out his announced intention to call the police, thus allowing defendant to continue to assault Danny, including with the arrow. OV 19 may be assessed for a "clear and obvious attempt" to interfere with a victims' ability to obtain justice. *People v Steele*, 283 Mich App 472, 493; 769 NW2d 256 (2009). Assessment of points for OV 19 is appropriate for "conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). Here, defendant's act of slapping the phone away from Danny, which precluded him from contacting the police, established that defendant "interfered with or attempted to interfere with the administration of justice," warranting the scoring of 10 points under MCL 777.49(c).[5]

---

[4] At sentencing, the trial court identified two ways that defendant attempted to interfere with the administration of justice. The first was agreeing with the prosecuting attorney's characterization of defendant's trial testimony as "so fantastic and so contra to the rest of the evidence as to be close if not perjury." The second was defendant's act of instructing a witness, Wass, to "keep it simple" when speaking to the police.

[5] MCL 777.49(b) calls for 15 points when "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ James Robert Redford

---

services."  MCL 777.49(b).  The facts that supported a scoring of 10 points under OV 19 also would have supported a scoring of 15 points under the same offense variable.